SMOOT, Appellant, v. JUDD et al.

Division One, March 29, 1901.

161   673
e95a  ²345
97a   ²345
97a   ²693
97a   ²694
97a   ²695

1. **Contract:** LEX LOCI. The law of the place where the contract is to be performed is the law of the contract. So that a note signed by a married woman, while on a visit to Kentucky, mailed to Missouri and signed by her husband, and returned to the wife in Kentucky, and there delivered by her to the payee, no place of payment being mentioned in the note, will be held to be a Missouri contract, because the makers lived here and the property specifically charged with its payment, both by the note itself and the mortgage, was also here.

2. **Note:** MARRIED WOMAN: NO SERVICE: FALSE RETURN: DEFAULT: EXECUTION SALE: PARTITION: RES ADJUDICATA. A note was signed by

Vol 161 mo—43

Smoot v. Judd.

a married woman and her husband in 1887. In 1891, after the statute making a married woman a *feme sole* for purposes of suits had gone into effect, the holder of the note brought suit thereon, but did not charge that the defendants were husband and wife, and no answer being made, judgment by default was entered, and, afterwards, when she had inherited an interest in the lands of a brother who had died, execution was issued on the judgment, and the land sold to the judgment creditor, who brought partition, and the land was sold to the defendants, and then this suit was brought to set aside their sheriff's deeds, and that of the judgment creditor, and the judgment itself, on the ground that the wife was never served with process in the suit on the note. The sheriff's return in that case showed personal service on her, and the judgment was based on that return, but as a matter of fact the return was false, the summons being served by giving a copy of the petition to the husband and leaving a copy of the writ with him for her. She never saw the writ and never heard of the suit until the suit in partition was brought, when she filed a motion to be made a party, which was denied. *Held,* first, that had she made answer and pleaded that she was a married woman, a judgment *in personam* could not have been rendered against her to be satisfied generally of her goods and chattels, lands and tenements; and had she answered, and not so pleaded such legal disability would have been waived, and, hence, such judgment could have been rendered. *Held,* second, that, as she did not answer, the failure of the plaintiff to allege that the defendants were husband and wife, can not be held fraudulent, but such omission so conspired with the false return in wrongly procuring a judgment against her by accident or mistake, as to justify a court of equity to interpose as readily as if it had been fraudulent. *Held,* third, that the false return of the sheriff will not be held conclusive upon her, but the judgment based thereon will be set aside, as will also the sheriff's deeds in partition. *Held,* fourth, that the striking out of her motion to be made a party in the partition suit did not affect her right to have this judgment set aside. That action was simply *res adjudicata* of the fact that her title could not be tried in that collateral proceeding.

3. **Sheriff's Return:** HOW FAR CONCLUSIVE: SUIT ON SHERIFF'S BOND. The rule that the sheriff's return on the summons is conclusive as between the parties to the suit, has no application in a suit in equity to set aside the judgment based on a false or fraudulent return. Nor does the fact that the judgment debtor may have a remedy at law by suit on the sheriff's bond for making such false re-

Smoot v. Judd.

turn, deprive him of his remedy to vacate such judgment obtained by means of such return.

4. ———: AMENDMENT. A court of equity has no authority in a suit to set aside a judgment founded on a false return, to amend that return to conform to the facts.

5. **Partition**: TITLE ACQUIRED BY PURCHASE. The purchaser at a partition sale acquires whatever title the coparceners owned at that time. They could not acquire the title of an execution defendant against whom judgment had been rendered without process, and whose title under such execution sale had been acquired by the plaintiff in the partition suit. As such plaintiff did not acquire her interest at the execution sale, so the purchaser at the partition acquired none.

Appeal from Barton Circuit Court.—*Hon. D. P. Stratton, Judge.*

REVERSED AND REMANDED.

*Willis H. Leavitt* for appellant.

(1) "A personal judgment can not be rendered against a married woman for a debt contracted prior to the revision of 1889, of our statutes." Bruns v. Capstick, 46 Mo. App. 397; Gazollo v. McCann, 63 Mo. App. 414; Higgins v. Peltzer, 49 Mo. 152; Weil v. Simmons, 66 Mo. 617; Alexander v. Lydick, 80 Mo. 342; Wernecke v. Wood, 58 Mo. 352; Lincoln v Rowe, 64 Mo. 139; Coe v. Ritter, 86 Mo. 278; Asbury v. Odell, 83 Mo. 264; Music v. Dodson, 76 Mo. 624; Caldwell v. Stephens, 57 Mo. 589; Gage v. Gates, 62 Mo. 412; Hoskinson v. Adkins, 77 Mo. 540; Long v. Cockrell, 55 Mo. 93; Napton v. Leaton, 71 Mo. 367; Bauer v. Bauer, 40 Mo. 61; Corrigan v. Bell, 73 Mo. 53. Such a judgment is elsewhere absolutely void. Higgins v. Peltzer, 49 Mo. 152; Caldwell v. Walters, 18 Pa. St. 79; Dorrance v. Scott, 3 Whart. 313; Morse v. Toppan, 3 Gray, 411; Watkins v. Abrahams, 24 N. Y. 72; Griffith v. Clark, 18 Md. 463; 1 Black on Judgments, secs. 188, 190, pp. 219, 223; Spencer v. Parsons (Ky.), 13 S. W. 72; Parsons v. Spen-

cer, 83 Ky. 305; Stevens v. Deering (Ky.), 9 S. W. 292; Hartman v. Ogborn, 54 Pa. St. 120; Graham v. Long, 65 Pa. St. 383; Swayne v. Lyon, 67 Pa. St. 439; Vandyke v. Wells, 103 Pa. St. 49; Davis v. Foye, 15 Miss. 64; Cary v. Dixon, 51 Miss. 593; Mallett v. Parham, 52 Miss. 921; Norton v. Meader, 4 Sawy. 603; White v. Foot, 29 W. Va. 385; Tavenner v. Barrett, 21 W. Va. 692. (2) While absence of coverture in the record proper is not decisive of the question whether a personal judgment against a married woman, based upon a presumed contract made prior to the revision of 1889 of our statutes, is void; yet, in this State, it does determine the question whether a bill in equity will lie, the party grieved being out of possession, and parties in possession holding a sheriff's deed. Beedle v. Mead, 81 Mo. 297; Clark v. Ins. Co., 52 Mo. 272; Groner v. Smith, 49 Mo. 324; Gazollo v. McCann, 63 Mo. App. 414. (3) The promise and contract of plaintiff having been made by her promissory note prior to the revision of 1889, it did not create any dormant obligation which could be made effective by that act, but was null and void the same after as before its passage. Bruns v. Capstick, 46 Mo. App. 403; Van Rheeden v. Bush, 44 Mo. App. 286; Gazollo v. McCann, 63 Mo. App. 421. (4) The separate estate of the wife, can only be reached for debts contracted by the wife during coverture, "in an action to subject the separate estate of the feme covert to the payment of her debts, and such an action is essentially a proceeding *in rem*. It is to reach specific property, which equity implies she intended to pledge or charge with the payment of the debt contracted. The petition must set out the property so intended to be charged; and, of consequence, that property must be in existence, so that if execution went instanter, there would be a *res* for the judgment to operate upon." The note given by Mrs. Smoot is dated April 15, 1887, and her legal statutory separate estate, inherited from

her brother, did not come to her until 1891.  The estate, therefore, was not *in esse* when Mrs. Smoot executed the note, and the law, therefore, will not presume that she intended to charge her separate estate with the Judd indebtedness; and especially so, when she charged in writing, specific property, when the debt was contracted.  Arnold v. Brockenbrough, 29 Mo. App. 637; Osborne v. Graham, 46 Mo. App. 34; Boatmens Sav. Bank v. Collins, 75 Mo. 280; Corn v. Brook, 21 Barb. 548; Kern v. Paff, 44 Mo. App. 33; Sicfert v. Jones, 84 Mo. 597. (5)  The attempt of appellant to intervene in the partition suit by appearance and answer and the action of the court refusing to permit her to be made a party defendant, gave the court no jurisdiction over her in that action, and she is not bound, affected or estopped by the decree in that case.  Windsor v. McVey, 93 U. S. 274.  This case is cited and approved in Dennison v. City of Kansas, 95 Mo. 429, and Williams v. Monroe, 125 Mo. 588:  (6) If we are right in our position that a judgment against a married woman, based up a contract made prior to the revision of 1889, of our statutes, is a nullity, for the reason that, being *non sui juris,* there is no juristic person upon whom the court can act, then it follows, as a logical sequence, that there never was, in legal contemplation, any person *in esse,* against whom process could run, or upon whom the sheriff could execute such process; and, therefore, the motion of defendants' attorney that the sheriff be permitted, in the equity suit, to amend his return in the action at law, so as to show a radically different service, should have been denied, for there was nothing to amend by.  Alderson on Judicial Writs and Process, sec. 72, pp. 127-129; sec. 192, p. 568; Durham v. Heaton, 28 Ill. 264; State v. Davis, 73 Ind. 359; Furnis v. Ellis, 2 Brock, Rep. 14; Barber v. Swan, 4 Greene (Ia.), 352; Ledford v. Weber, 7 Ill. App. 87; Railroad v. Warden, 73 Mo. App. 122.  Moreover, "the rule prevails that, as to the officer,

the return is conclusive. He can not contradict or vary it." Alderson on Judicial Writs and Process, sec. 195, p. 577; Duncan v. Gerdine, 59 Miss. 550; Hoffer v. Reed, 3 Grant's Cases (Pa.), 245; Ayers v. Duprey, 27 Tex. 593; Eastman v. Bennett, 6 Wis. 232; State v. Penner, 27 Minn. 269. (7) The personal judgment against Mrs. Smoot being void, the execution sale thereunder, sheriff's deed to Judd, decree in partition, and sheriff's deeds to Brand and Jackson, are all void *ab initio.* 1 Freeman on Judgments (4 Ed.), sec. 117, p. 116; Higgins v. Peltzer, 49 Mo. 152; Schmidt v. Niemeyer, 100 Mo. 207; Jones v. Driskill, 94 Mo. 190; Cloud v. Inhabitants, 86 Mo. 366; Miller v. Schnebly, 103 Mo. 374; Gabriel v. Mullen, 30 Mo. App. 468; Newton v. Newton, 32 Mo. App. 162. (8) Appellant's remedy is a bill in equity, and in equity she can attack a return in an action at law, though not disclosing want of jurisdiction, and in every respect regular upon its face. 2 Freeman on Judgments (4 Ed.), sec. 495; Owens v. Ranstead, 22 Ill. 161; Crafts v. Dexter, 8 Ala. 577; Dunklin v. Wilson, 64 Ala. 162; Rice v. Tobias, 89 Ala. 214; Ryan v. Boyd, 33 Ark. 778; Stole v. Hill, 50 Ark. 458; Hansworth v. Sullivan, 6 Mont. 203. And that, too, where the judgment recites that "defendant has been duly and legally served." Bank v. Eldridge, 28 Conn. 536; Newcomb v. Dewey, 27 Iowa 381; State v. Skerry, 31 Iowa 582; Ridgeway v. Bank, 11 Hump. 522; Owens v. Ranstead, 22 Ill. 161; Johnson v. Coleman, 23 Wis. 452; Crawford v. Redus, 54 Miss. 700.

*Thurman, Wray & Timmonds* for respondents.

(1) Appellant was *sui juris.* The statute expressly provides that she may contract, and be contracted with, sue and be sued, as a feme sole. R. S. 1889, sec. 6864; Brows v. Dressler, 125 Mo. 589; Clow v. Chapman, 125 Mo. 101; Long

v. Martin, 71 Mo. App. 569; Huss v. Culver, 70 Mo. App. 514. (2) Jurisdiction of the subject-matter is the power to adjudge concerning the general question involved. Railroad v. Lowder, 138 Mo. 533; Scott v. Smith, 104 Mo. 419; State ex rel. v. Neville, 110 Mo. 345; Music v. Railroad, 114 Mo. 309; Hope v. Blair, 105 Mo. 85; Adams v. Cowles, 95 Mo. 501; Thompson v. Railroad, 110 Mo. 149; Jones v. Driskill, 94 Mo. 190; Rees v. McDaniels, 115 Mo. 149; U. S. v. Arredondo, 6 Peters, 709; R. I. v. Mass., 12 Peters, 718; 1 Bouvier L. D., p. 769; 1 Rapalje L. D., p. 702.   (a)  The circuit court being a court of general jurisdiction, there is no subject of litigation beyond its jurisdiction except such as are conferred on courts of limited jurisdiction. Wonderly v. Lafayette, 150 Mo. 635.   (b)  Every presumption is to be indulged in favor of the jurisdiction of a court of general jurisdiction. Buddecke v. Ziegenhein, 122 Mo. 239; Truesdail v. McCormick, 126 Mo. 39.   (c)  Where there is jurisdiction of the person and subject-matter, the judgment is valid, although the petition fails to state a cause of action. DeGraw v. DeGraw, 7 Mo. App. 121; Dollarhide v. Parks, 92 Mo. 178; Holt Co. v. Cannon, 114 Mo. 514; Winningham v. Trueblood, 149 Mo. 572. (3) The appellant appeared in the partition suit of Judd v. Downing, in the Barton Circuit Court, through which the respondents obtained title, and by her answer in that case set up a defense, in substance the same facts she now sets up as the basis of the relief sought in this suit in equity. Her answer was by the court held insufficient and on motion stricken out. She not having appealed from that judgment, but having abided the decision and ruling against her by the circuit court having jurisdiction of that case, she has had her day in court on the issues in this case and can not now, as against these respondents, again have them adjudicated. Caldwell v. White, 77 Mo. 471; Shelbina Hotel Association v. Parker, 58 Mo.

327; Stevenson v. Edwards, 98 Mo. 622; Case v. Garton, 33 Mo. App. 597. (4) This action could not be maintained if the judgment against appellant in the case of Judd v. Smoot was void. If the judgment was void, she never was divested of title, and the entire proceedings resting on that judgment are a nullity, and she has an adequate remedy at law for the recovery of the real estate in possession of respondents. Courts of equity do not interfere to do a nugatory act. A decree of the court of equity can not make void proceedings "more void." Railroad v. Reynolds, 89 Mo. 146; Railroad v. Lowder, 138 Mo. 533. A court of equity will not entertain jurisdiction to remove a cloud from plaintiff's title when the defendant is in possession of the property; the remedy is by action at law. Graves v. Ewart, 99 Mo. 13; Davis v. Sloan, 95 Mo. 552; McRee v. Gardner, 131 Mo. 599; Clark v. Ins. Co., 52 Mo. 272; Keane v. Kyne, 66 Mo. 216. The one exception to this rule is where the plaintiff's title is an equitable and not a legal title.

VALLIANT, J.—This is a suit in equity to set aside a judgment rendered against plaintiff, a sheriff's deed to her undivided interest in certain land sold under execution of the judgment, and two sheriff's deeds to the same land in a partition proceeding brought by the grantee in the first deed against the parties owning the other undivided interest in the land. The person in whose favor the judgment was rendered and who was also the purchaser at the execution sale, and the purchasers at the partition sale, are parties defendant.

The facts of the case are:

In 1887 the plaintiff was a married woman living with her husband in Barton county. She owned some real estate in Jasper county, which was all the property she had. On April 15, 1887, she executed, jointly with her husband, a promissory

note for $683.61, payable one day after date, to defendant Judd, and a mortgage on the Jasper county land to secure it. The note on its face mentions the mortgage and the land mortgaged. This note was given for money advanced by Judd to plaintiff's husband. She was at the time she signed the note and mortgage, in Kentucky on a visit, and her husband was at their home in Missouri, where he signed the papers. Judd lives in Kentucky, and is a lawyer. The mortgage was afterwards released by Judd, who seems to have been very friendly and indulgent to plaintiff and her husband. But in July, 1891, the note was not paid, nor the interest, and the mortgaged property, or rather the property that had been mortgaged but released, had been sold by the plaintiff and her husband. Judd placed the note in attorneys' hands for suit, and suit was brought on it against plaintiff and her husband to the September term, 1891, of the Barton Circuit Court. The petition in that case did not describe the defendants as husband and wife and there was nothing on the face of the petition or note to show that the plaintiff was a married woman, neither was there any such information in the sheriff's return. The return was personal service on both defendants. There was no answer filed, and accordingly at the September term, the court rendered final judgment by default against both defendants for the amount of the note and interest, $925.13, and costs. Afterwards, a brother of plaintiff died intestate, leaving certain real estate in Barton county, and leaving as his heirs at law a brother and three sisters, of whom the plaintiff was one. Execution issued on the above mentioned judgment, and under it the sheriff sold the undivided interest of the plaintiff in that land on March 10, 1892, and the judgment creditor, Judd, became the purchaser and received the sheriff's deed accordingly. That is one of the deeds sought to be cancelled.

In October, 1893, Judd brought suit against the other

heirs of plaintiff's deceased brother for partition of the land, alleging that by purchase he had become the owner of the undivided interest of the plaintiff, Mrs. Smoot. Plaintiff in this suit filed a motion in that suit, stating that she owned an interest in the property sought to be divided, and asking to be made a party, but her motion was overruled. But it seems she did file an answer, said to be by leave, but on motion of the plaintiff in that suit, Judd, her answer was stricken out.

The grounds of that motion were:

"Because Ella G. Smoot has no right or authority in law to be made a party defendant in this suit.

"Because said answer seeks to try the title to a tract of land described in plaintiff's petition and sought to be partitioned.

"Because said Ella G. Smoot has ample remedy, and is fully protected, if any rights she has which will not be affected by the proceedings in this case."

There was a decree for the sale of the land for partition and it was sold accordingly, and the defendants Amos Brand and Wm. Jackson became the purchasers in several parts, and received the sheriff's deeds for the parts they respectively purchased. Those deeds are also assailed in this suit.

The evidence showed that the sheriff's return on the summons in the suit on the note was false in reference to the plaintiff in this case, Mrs. Smoot; she was not served personally as in the return stated. The court suffered the sheriff to testify that when he called to serve the writ Mrs. Smoot was quite sick in bed, and for that reason he did not intrude, but served the writ on her husband, who was co-defendant, and left a copy of the writ with him for his wife, and upon that evidence the court allowed the sheriff then to amend the return. There was some effort to show that she had actual knowledge that the suit was pending, but the proof in that direction was not very pos-

itive.   One of the attorneys for Judd testified that he called
on plaintiff and her husband about the note before suit was
brought to try to collect it, and gave them to understand that
suit would be brought if it was not satisfactorily arranged, but
that he had no further conversation with her until after the
judgment had been rendered, when there was some negotia-
tion between them looking to a sale of the land and a purchase
by Judd with time allowed to redeem; that negotiation re-
sulted in nothing.   He said that in that negotiation they had
an attorney's advice; that attorney was called by defendants,
and over plaintiff's objection, that if he was, as he claimed to
have been, plaintiff's attorney, he was incompetent to testify
as to what his client said, the court allowed him to testify.

He said:

"I remember having had a conversation with you (defend-
ant's attorney) in regard to the Judd suit, and I remember dis-
tinctly that what the Smoots wanted in that case was that I
delay the Downing suit and the Judd suit until they could
make a turn in their affairs, to make time to pay the money;
that is all they wanted as far as the representation they made
to me; the fact is as to the Judd suit, Mr. and Mrs. Smoot,
when they talked to me about it, said that Mr. Judd had treated
them very kindly and they did not want to fight the suit and
simply wanted time in which to meet the obligation."   Cross-
examined:   "Q.   Were you employed by Mr. Smoot to look
after his interest in this Judd suit?   A.   I was employed in
and about this suit, yes. ...... Q.   Were you employed
by Mr. Smoot to look after this suit?   A.   In the way he
wanted it looked after, I was.   Q.   You were employed by
him?  A. Yes, sir.  Q.  Did you let that suit go by default?  A.
Yes sir.   Q.   Why?   A.   They wanted no expenses made
on the agreement that Mr. Judd was to give them time to pay
off the note.   Q.   When was that?   A.   I do not think I

talked to Mrs. Smoot prior to the time judgment was rendered, but after the judgment was rendered I talked to her. ......
Q.   Mrs. Smoot did not employ you to look after that Judd matter, you did not have specific employment to look after that Judd matter in behalf of Mrs. Smoot?   A.   As I stated originally, Mr. Smoot talked to me about the matter, but I do not remember that I had any talk with Mrs. Smoot about it until after the judgment was rendered; took it for granted that it interested them both, she was his wife; whatever he did was all right."

It was not disputed that after the judgment was rendered this attorney was consulted by Mrs. Smoot in relation to the administration of her deceased brother's estate.   She testified positively that she never spoke to him about the Judd suit, and knew nothing herself about it, nor that a judgment had been rendered until in looking after her interest in her brother's estate she found that it had been sold.

The foregoing are substantially the facts in the case.   The chancellor found the issues for the defendants and dismissed the plaintiff's bill, from which decree she appeals.

I.   The case was tried on the theory that the note was a Missouri contract and subject to our laws, and that was probably correct, although it was signed by Mrs. Smoot in Kentucky, mailed to her husband here who signed it and returned it to Kentucky, where it was delivered to the payee, who was a resident of that State.   No place of payment is mentioned in the note, but as the makers lived here and, so far as the married woman's obligation is concerned, the property charged with its payment being in Missouri, this may be considered as the place intended for the performance of the contract.   The law of the place where the contract is to be performed is the law of the contract.

That point, however, is not very material in this case, be-

cause in 1887, the common-law disability of a married woman to incur a general personal liability by making a promissory note, was the law in this State, and if there was a statute in Kentucky removing such disability it has not been pleaded or proven.

It is conceded by the counsel on both sides that at the date of the note in question, 1887, a married woman could not by such an instrument incur the liability of a debt for which a judgment *in personam* could be rendered against her, to be satisfied generally of her goods and chattels, lands and tenements. But the contention for the defendants is that in 1891 when suit was brought on the note, she had been by section 6864, Revised Statutes 1889, reduced to the condition of "a *feme sole* so far as to enable her to carry on and transact business on her own account, to contract and be contracted with, to sue and be sued, and to enforce and have enforced against her property such judgments as may be rendered for or against her, and may sue or be sued at law or in equity, with or without her husband being joined as a party," and that therefore when the court at that date rendered judgment against her the judgment was valid.

If a person *sui juris* is sued and brought regularly into court by process to answer a petition that states on its face a good cause of action, though he may have a good defense, yet if he omits to plead it, or if he pleads it yet fails to sustain it by proof, and the judgment goes against him, his defense is extinguished in the judgment and can not afterwards be set up against it. And to that condition modern legislation has brought married women.

If the petition in the case of Judd v. Smoot had stated upon its face that the defendants were husband and wife when the note was signed, it would not have stated a cause of action against the wife, because it would have shown that at

that date she was incapable of making a note. But the petition omitted that statement, and the court had no right to presume that either defendant was *non sui juris*. But if Mrs. Smoot was in court by process, the duty devolved upon her to plead that fact and that would have been a complete defense to the suit. She was then (assuming that she had been duly served with process), as responsible for her acts in relation to that suit as her husband was for his own acts; she could make her defense good if she chose to do so, or she could waive it and let judgment go against her, and if she waived it and let the judgment go she could not afterwards complain.

The numerous cases cited in the briefs of counsel to show that a judgment *in personam* against a married woman upon a money obligation is void, are cases that arose when the law recognized that a married woman's highest duties were those that pertained to her as wife and mother, and when it did not expect of her that close attention to affairs of business that is expected of others, and when it drew over her its shield of protection. But that particular protection is now withdrawn, and she must take care of her own business affairs. In the suit of Judd v. Smoot the petition stated a cause of action, the sheriff's return showed that the process had been served upon both defendants in person, and therefore it appeared from the record that the court had jurisdiction both of the subject of the suit and the persons. The judgment on the face of the record is entirely valid and can not be assailed collaterally, that is, it can not be now questioned on the ground merely that a fact existed which might have been interposed as a valid defense but was not.

But this is not a collateral attack, nor is it an attempt merely to plead now a defense which she had the opportunity to plead then but which opportunity she neglected. This is a direct assault in a court of equity upon the judgment. There

is no necessity for reviewing now the authorities ·on this branch of equity jurisdiction. This court has recently discussed the subject with the aid of the authorities in Wonderly v. Lafayette Co., 150 Mo. 635. The doctrine is thus stated by an able law writer: "The power and jurisdiction of courts of equity to enjoin a party from enforcing a judgment which has been obtained, when it would be against conscience to permit him to do so, is at the present day so firmly established, so salutary in its operation, and so thoroughly in accord with the promptings of justice, that it is difficult to realize the stubbornness and bitter jealousy with which the beginnings of its exercise were resisted." [1 Black on Judgments, sec 356.] Another eminent text-writer has said: "Where the defendant in an action at law has a good defense on the merits, which he is prevented by accident from setting up or making available, without any negligence or inattention on his part, and a judgment is rendered against him, equity will exercise its jurisdiction on his behalf by enjoining further proceedings to enforce the judgment, or by setting it aside so that a trial may be had on its merits." [2 Pomeroy's Eq. Jur., sec. 836.] And what is there said of accident is repeated by the same author concerning mistake and fraud. [*Idem*, sections 871 and 919.] The author also gives definitions of the terms "accident" and "mistake" as affecting equity jurisdiction in sections 823 and 839.

When the law books speak of a defense on the merits it means legal merits, merits that the law recognizes and gives effect to. That Mrs. Smoot had such a defense to that suit is conceded, that that defense was known at the time to the plaintiff in that case is conceded, that she was not in fact served with process in the case and did not know that the suit was pending, is clearly shown by the evidence. . She had therefore no opportunity to make her defense. Nor was the plaintiff

in that suit, Judd, entirely without fault in the matter. He knew that she was a married woman and was not legally bound on the note, yet he omitted to state in his petition that the defendants were husband and wife. It can not be said of that omission that it was fraudulent, because when the plaintiff filed his petition he caused summons to issue to bring in the defendants, and he had a right to presume that Mrs. Smoot would be summoned in the regular way, and that when she should be brought into court she could plead the fact if she chose and that would end it. But that omission is a fact which conspired with other facts to deprive her of her defense without any neglect on her part. A court of equity interposes in such matters when wrong has been done through accident or mistake as readily as when there has been fraud.

When the fact was proven beyond controversy that the sheriff's return on the summons was false, the court allowed him, over plaintiff's objection, to testify that he gave a copy of the writ to plaintiff's husband for her. The court in the trial of this case had no right to allow the sheriff to amend his return in that case. The only issue in this case on the point of the sheriff's return was in relation to the return as it was when the judgment by default was rendered. That return she averred was false and issue was joined on that averment. Her proof was addressed to that issue and it sustained her averment beyond controversy. If she had been informed that in case she succeeded in showing that the return in issue was false, the defendants would be allowed to spring another return on her and give her a new issue to try, she might have been prepared for that also. But she was not required to make such preparation nor to anticipate such an issue. The defendants strove to maintain the return as it was; when the plaintiff offered her evidence to disprove it, they objected on the ground that the return was conclusive, and it was not until

Smoot v. Judd.

the falsity was proven that an attempt to set up another return was made. The sheriff was defendant's witness, but he could give no explanation or excuse for the falsity of the return. He said: "I do not know what made me make the return as I did."

There was some attempt to show that the plaintiff had actual knowledge of the pendency of the suit. But the defendant's evidence on that point went scarcely farther than tending to show that she knew the note was in the hands of attorneys and that suit was threatened. Against her own positive testimony that she had no knowledge of the suit until after the judgment had been rendered there is scarcely any evidence at all.

Even the attorney who claimed to represent her (and whose testimony was clearly incompetent) whilst he testified in chief as to what "the Smoots" wanted "as far as the representation they made to me," yet on cross-examination he said that it was Mr. Smoot who spoke to him and that he did not see Mrs. Smoot until after the judgment was rendered. Her testimony was that she knew nothing of it until her interest in the land had been sold.

There are numerous decisions in this State in which it is held that the sheriff's return on the writ is conclusive as between the parties to the suit. [Heath v. M., K. & T. Ry., 83 Mo. 617; Decker v. Armstrong, 87 Mo. 316; State ex rel. v. Finn, 100 Mo. 429.] But that well-established principle of law has no application in a suit in equity to set aside the judgment founded on the return on the equitable ground of fraud, accident or mistake. The fact that Mrs. Smoot might have a remedy at law by suit on the sheriff's bond does not deprive her of her remedy in equity to vacate the judgment obtained by means of the false return. The remedy at law which will de-

Vol 161 mo—44

feat a suit in·equity is a remedy on the same cause of action against the same defendants. [Thorn & Hunkins L. & C. Co. v. Citizens Bank, 158 Mo. 272, and authorities there cited.]

It has been frequently held in other States that a judgment by default rendered on a false return will be set aside or its execution enjoined in a court of equity. [Crafts v. Dexter, 8 Ala. 767; Rice v. Tobias, 89 Ala. 214; Bell v. Williams, 1 Head (Tenn.) 229; Ridgeway v. Bank, 11 Humph. (Tenn.) 523; McNeill v. Edie, 24 Kan. 103; Ryan v. Boyd, 33 Ark. 778; Blakeslee v. Murphy, 44 Conn. 188; Great Western Min. Co. v. Woodmas, 12 Col. 46; Hickey v. Stone, 60 Ill. 453.] Indeed it would be so contrary to right and justice to allow a judgment obtained by such means to stand that it is strange there could be any question of the power and duty of a court of conscience in the premises.

The Constitution of Missouri ordains that "no person shall be deprived of life, liberty or property without due process of law." A more flagrant violation of this constitutional provision can not be conceived than to take one's property by means of a false return of the process. But the root of equity jurisdiction in such cases is planted deeper than in even a written constitution; it is planted in that enlightened sense of right and justice that lies at the foundation of all our laws and finds chief expression in a court of equity.

Mrs. Smoot had a good defense to that suit and the plaintiff there knew it, and by means of a false return judgment by default was rendered against her, thus without fault on her part she was afforded no opportunity to interpose her defense. Such a judgment can not be suffered to stand in a court of equity.

II. Execution issued on the judgment and under it the sheriff sold Mrs. Smoot's undivided interest in the land she inherited from her brother, and at the sale the plaintiff in the

execution, Judd, became the purchaser. Then he instituted proceedings for partition against the other heirs. Mrs. Smoot petitioned the court to be made a party to the proceeding, but her petition was denied. She filed an answer, however, in which she denied that Judd had acquired title to her interest and sought to raise an issue as to plaintiff's title, but on motion of the plaintiff in that suit her answer was stricken out, and the cause proceeded to final decree under which the property was sold for partition and the defendants Brand and Jackson became the purchasers at the sale. Now, it is insisted that the decree in that case is conclusive against the title asserted by Mrs. Smoot here, that what was there adjudged is as to her *res adjudicata.*

The court refused to admit her as a party and struck out her answer upon the ground that the question of title could not be tried in that case and that any interest she might have in the land could not be affected by the decree and proceedings there. Those were the grounds asserted by the plaintiff in that case in his motion to strike out and that is what the court decided. That ruling was *res adjudicata* of that point and it was the only thing decided in that case that was *res adjudicata* as to Mrs. Smoot. As to the dispute between Mrs. Smoot and the plaintiff in that case in reference to her claim of title, there was no decision. There is nothing in that proceeding that impairs the rights she asserts here.

III. The purchasers at the sheriff's sale under the decree in the partition suit acquired the title that the parties to that suit had, nothing more. [Sec. 7089, R. S. 1889, now sec. 4353, R. S. 1899; Pentz v. Kuester, 41 Mo. 447; Cashion v. Faina, 47 Mo. 133; Stephens v. Ellis, 65 Mo. 456; Hart v. Steedman, 98 Mo. 452.] They took at the sale whatever Mr. Judd had to convey of the interest that Mrs. Smoot inherited from her brother and they took it subject to her equities. As

against Mr. Judd the plaintiff is entitled to a cancellation of the sheriff's deed under the execution, and as against the purchasers at the partition sale she is entitled to the same, the effect of which is to vest the title of an undivided one-fourth of the land in her, and she is also entitled to an account from them of the rents and profits of her one-fourth interest.

The judgment is reversed and the cause is remanded to the circuit court of Barton county with directions to enter a decree enjoining defendant Judd from enforcing his judgment rendered at the September term of that court, so far as it affects Mrs. Smoot, and cancelling the sheriff's deed to Judd, dated March 10, 1892, and declaring that the plaintiff, Mrs. Smoot, is entitled to an undivided one-fourth of the land described in the petition in the partition suit in spite of the sale made by the sheriff under the decree in that suit, and directing an accounting by defendants Brand and Jackson with plaintiff of the rents and profits had and received by them, respectively, of her undivided fourth, and upon the coming in of the account and ascertaining of the amounts due her, rendering judgment in her favor for the same against those two defendants, respectively, each for the amount he has received, and judgment against all the defendants for costs.

All concur, except *Marshall, J.,* absent.

## ON REHEARING.

VALLIANT, J.—Upon a reconsideration of this cause on the motion for rehearing we are of the opinion that the ends of justice would be better served by remanding the cause to the circuit court for trial *de novo* with leave to defendants if they see fit to amend their answer admitting the falsity of the return as made, but averring service in fact of the nature indicated by

their evidence, and actual notice to the plaintiff of the pendency of the suit, upon which plaintiff may join issue.

We see no reason to change our views on the law points contained in the original opinion. In their argument on this motion counsel comment on the failure of the plaintiff's husband to testify at the trial. Upon the issue relating to the service as the pleadings were at that trial the husband was not a competent witness, but if an issue is tendered showing that he was made by the sheriff the agent to deliver the writ to his wife, he would be a competent witness on that point.

The judgment of this court of date March 12, 1901, is therefore so modified that instead of remanding the cause with directions to enter a decree as therein specified, the judgment of the circuit court is reversed and the cause remanded to that court for a trial *de novo,* according to the views in our original opinion and herein expressed, and with leave to amend the pleadings as above indicated.

*Brace, P. J.,* and *Robinson, J.,* who concurred in the original opinion, concur also in what is here said.