AULTMAN *et al.*, *Appellants*, v. BOOTH *et al.*

1. **Statute of Frauds, Waiver of.** One agreeing by an oral contract to convey lands may waive his right to insist on the statute of frauds.

2. **Fraudulent Conveyance, What Not.** Where land is bought and wholly paid for by the money of one, and the title is taken in the name of another, in consideration of the latter's agreeing to support the former during his life and to convey the land to him when requested, which was done, such conveyance is not assailable by the grantor's creditors as being in fraud of his creditors.

| 95 | 383 |
| 121 | 186 |
| 95 | 383 |
| 82a | 662 |
| 95 | 383 |
| 96a | 1332 |

*Appeal from Greene Circuit Court.*—HON. W. F. GEIGER, Judge.

AFFIRMED.

*Francis H. Sheppard* for appellants.

(1) A resulting trust requires no writing, but an express trust not put in writing is void, *i. e.*, may not be proved. R. S., secs. 2511–12. (2) Two things are required to create a valid express trust: first, a consideration; second, a written declaration of use in some form. Two things are needed to give rise to a resulting trust: first, absence of consideration from the trustee; second, no written declaration of the use. 4 Kent Com. [12 Ed.] 306; *Forrester v. Moore*, 77 Mo. 662. (3) Taking all defendants' testimony as true, there was an

express oral contract between Booth and Twigg for Booth to hold the land in trust for Twigg. This created no resulting trust, but was an attempt to create an express trust without writing. 2 Sug. Vend. [14 Ed.] p. 701, sec. 13, and authorities there cited; Browne on Frauds [3 Ed.] secs. 84, 92-5; *Green v. Cates*, 73 Mo. 120; *Parker v. Bodley*, 4 Bibb, 102; *Chiles v. Woodson*, 2 Bibb, 72; 2 Shep. Touch. [8 Ed.] 501-2. (4) The testimony of Twigg and Booth show that the transaction between them was either a sale—both testifying to a consideration from Booth to Twigg—or else a secret trust. If it was a sale, the land was Booth's and subject to his debts. If it was a secret trust, the consideration from Booth and the express oral agreement make it an express trust, void for lack of writing, and the land was Booth's and subject to his debts. Authorities under 3. (5) The testimony, if true and admissible, shows that Booth took an estate in fee, defeasible on bare request. A man in debt cannot make gifts, and no formal and premeditated confederacy to defraud need be shown. *Burgert v. Borchert*, 59 Mo. 80. (6) The land being Booth's, he could not make a voluntary conveyance binding on plaintiffs who were existing creditors. *Peay v. Sablett*, 1 Mo. 449; *Potter v. McDowell*, 31 Mo. 62; *White v. McPheeters*, 75 Mo. 286. (7) Booth having filed his deed for record after the judgment sued on was rendered, cannot and does not claim homestead. R. S., sec. 2695. (8) If the original conveyance direct to Booth was a gift from Twigg, voluntary conveyances are good among the parties. Story Eq. [11 Ed.] sec. 371. (9) Secret trusts and powers are not favored by the law or permitted to stand in the way of creditors. Courts will not allow a party to evade the law by doing indirectly that which he could not do directly. *Sibley v. Hood*, 3 Mo. 290-8; *Schmucker v. Reel*, 61 Mo. 602-3; *Donovan v. Dunning*, 69 Mo. 436; *Rogers v. Rogers*,

Aultman v. Booth.

87 Mo. 257. (10) Where a grantee conceals his deed and makes his grantor's creditors believe the grantor still the owner of the land, so that credit is given the grantor on the faith of the land, the land will be considered as the grantor's still. The reason of this decision applies to a secret trust. *Goldsby v. Johnson*, 82 Mo. 602. (11) Parties or privies cannot allege their own fraud as a ground for varying their deed. *Henderson v. Henderson*, 13 Mo. 151; *Hollocher v. Hollocher*, 62 Mo. 273; *Crow v. Beardsley*, 68 Mo. 435-9; *Leavitt v. Laforce*, 71 Mo. 353-4; *Baldwin v. Whitcomb*, 71 Mo. 651-9; *Massey v. Young*, 73 Mo. 260.

*O. H. Travers* for respondents.

There was a resulting trust in favor of Twigg. 1 Perry on Trusts, p. 138, sec. 126; *Kelly v. Johnson*, 28 Mo. 249; *Baumgartner v. Guesfield*, 38 Mo. 36; *Johnson v. Quarles*, 46 Mo. 423. A trust results to the person only whose money paid the consideration. *Bostleman v. Bostleman*, 24 N. J. Eq. 103. The ownership of the purchase money is the controlling question in determining the resulting trust. *Bowen v. Bowen*, 79 Mo. 539; *Moulton v. Haley*, 57 N. H. 184. The express agreement set up in the answer for the reconveyance of the property to defendant Twigg is valid and not within the statute of frauds. *McGowan v. West*, 7 Mo. 567; *Farrar v. Patton*, 20 Mo. 81. Even if the agreement to reconvey were within the statute, its performance would satisfy the statute. Resulting trusts are not within the statute of frauds. *Graves' Heirs v. Fulsome*, 16 Mo. 543; *Cason v. Cason*, 28 Mo. 47; *Cloud v. Ivie*, 28 Mo. 578; *Damschroeder v. Thias*, 51 Mo. 100; *Baier v. Berberich*, 6 Mo. App. 537; *Rogers v. Rogers*, 87 Mo. 257.

NORTON, C. J.—This is a proceeding in equity in

which it is alleged that plaintiff corporation obtained judgment in the circuit court of the United States for the eastern division of the western district of Missouri, on the eighteenth of April, 1883, against the defendant, John M. Booth, for $873.46; that execution issued on said judgment, under which the northeast quarter of the northwest quarter and the southeast quarter of the northeast quarter of section twenty-three, township thirty-one, range twenty-one, situated in Greene county, were sold on August 1, 1883, by the marshal of said court, as the property of said Booth, and plaintiff became the purchaser and received the marshal's deed therefor. This suit is brought to vacate a certain deed made by said Booth and wife, dated April 7, 1883, conveying said lands to Elisha Trigg, and a certain deed from said Trigg, dated April 10, 1883, conveying said lands to defendant, Sarah M. Booth. It is alleged that these deeds were voluntary and made without consideration for the purpose of defrauding plaintiff in the collection of its debt, and for that reason the court is asked to declare them void. The answer denies all fraud, and sets up a special defence, which the evidence hereinafter considered will disclose. On the trial judgment was rendered for defendants, from which plaintiffs have appealed, and insist that under the evidence the decree should have been for plaintiffs.

Plaintiffs introduced defendant Trigg as a witness, who testified as follows: "I am seventy-three years old; I lived in Cloud county, Kansas, before coming here, on my farm of one hundred and sixty acres; defendant John Booth is my nephew; his mother and my wife were sisters; he lived on a place adjoining mine in Kansas; my farm was a little better than his; Aultman & Company sued him for a machine he bought and had not paid for; he has no property in Kansas now; he lives in the southeast corner of Polk county, near Greene county line; I did have a little store there; am

running it still ; I bought the land in Polk county and paid what has been paid on it; it is not all paid for; don't know this land by the numbers ; don't know the sections ; the lands do not lie together ; the northern forty in Greene county is the best; don't know what it is worth ; Mrs. Booth has a crop on it now ; I sold my farm in Kansas ; sold and traded it together ; got five or six hundred dollars in money, I believe, also two horses ; don't know what they were worth—fifty or seventy-five dollars each, I suppose ; that was all I got for the farm ; there was no water on the Kansas farm except well water ; I sold the southern forty in Greene county to Gray ; don't recollect when ; got some money and something out of the store ; I don't recollect what time I sold these forties to Booth ; it was about two years ago ; I was old and crippled up when I came to the country, and Booth and his wife had been taking care of me ; I was not able to work and I gave them the place on the agreement that they should take care of me while I lived ; they agreed if I got dissatisfied and wanted it back they would give it back to me ; I deeded the land to them in consideration of their supporting me, taking care of me, feeding me, clothing me, etc. ; I was to live in the house with them ; I paid for it with the proceeds of my farm in Kansas ; Booth and his wife had no money in the farm ; both deeds were made to Booth and his wife ; I wasn't able to do it, and sent them to Springfield to get the deeds made out ; I then gave a mortgage on the land and paid it off with my own money ; neither Booth nor his wife ever had a cent in the land ; I got dissatisfied and had a deed made to Mrs. Booth, taking the land out of Booth and vesting it exclusively in Mrs. Booth ; I thought it would be safer in her hands ; that is why I had the deed made to her ; I have been crippled and infirm about four years ; have kidney disease ; I am not able to work now ; am permanently disabled and was when I made the deed to Booth ; Booth did not

have any other means to take care of me; he sold his own land in Kansas; I think it would be hard for them to take care of me without the land I gave them or Mrs. Booth; they have five or six children; there is a dwelling on the Polk county land; I built it; Booth has no money in it; he has not put any fencing on the land since going there; he helped build the house and stable: he did not clear any of the land; two forties in Greene county and one in Polk county make the farm; I fixed it so the farm would maintain me; I put it in Booth's name first; got dissatisfied and changed it to Mrs. Booth; the reason I did not take back the land to myself was because I could not pay Mrs. Booth for her labor; no money passed between us; I was dissatisfied because I thought Booth was not doing exactly right; I bargained the other forty to a man near Fair Grove, but you spiled it; Booth had no interest in the land; he made no improvements on it; if she was willing I could sell the land; I have it fixed so that I could do that; the land was mine and I thought I could do as I pleased with it; there was no talk between Booth and myself about his indebtedness, and I did not have him deed the land away and then deed it to Mrs. Booth to defraud any person; it was my land and I thought it would be safer in Mrs. Booth's hands or name."

Defendant Booth was also introduced as a witness by plaintiffs, and in his evidence fully corroborates Trigg as to the fact that neither he nor his wife had paid one cent for the land, but that it was bought and paid for with the money of Trigg; also as to the agreement that he was to support and care for Trigg, as testified to by him, and convey the land back to him when he wanted it. He also testified that outside of the land he had no other means to carry out this agreement with Trigg. The fact that the land in question was bought and wholly paid for with the money of Trigg is

established by the evidence offered by plaintiffs, and it is also established that the title thereto was put in defendant Booth, in consideration of his agreeing to support and maintain Trigg during his life, and the agreement of Booth to convey the land back to Trigg when he requested it or became dissatisfied.

It is insisted that said agreement to convey not being in writing, but resting in parol, is within the statute of frauds. Granting this to be so, Booth might have declined to execute the contract on that ground. He did not do so, but on the contrary, waived his right in that respect and executed the deed to Trigg according to the intention of the parties, the agreement made and the right of the matter. As early as the case of *McGowen v. West*, 7 Mo. 570, it was laid down that: "The person making a parol contract to convey lands may or may not insist on the protection of the statute of frauds. If he will confess the agreement and not insist on the statute, its performance will be enforced against him." The doctrine of that case is reaffirmed in *Farrar v. Patton*, 20 Mo. 81.

There is no equity in, plaintiffs' case under the evidence, and the judgment being for the right party, it is hereby affirmed. All concur.