JOSEPH C. MILLER et al., Respondents, v. WESTERN UNION TELEGRAPH COMPANY, Appellant.

Kansas City Court of Appeals, June 12, 1911.

1. **TELEGRAPHS AND TELEPHONES: Contracts: Erroneous Message Corrected by Letter: Duty of Person Receiving.** This was a suit for damages alleged to have been sustained by an error of defendants in the transmission of a telegram. Plaintiffs received by wire an offer for grain at a price which, through the mistake of the defendant company, was three cents too high. Relying upon the erroneous telegram, plaintiffs by telephone agreed with a third party to buy the grain at a lower price, and, through him, to deliver same to the sender of the telegram. However, before any further steps were taken by plaintiffs, they received a letter stating the correct price. Plaintiffs elected to fill at this last price. They then sued for damage sustained by the difference in price between that named in the erroneous message, and the price which they agreed by telephone to pay the third party to deliver the corn to them. *Held*, that it was the duty of plaintiffs when they ascertained the error in the telegram to use reasonable diligence to prevent loss likely to accrue in consequence of such error, and since plaintiffs instead of so doing, voluntarily in effect contracted anew for the grain, the evident purpose being to claim damages, they cannot recover.

Miller v. Western Union Tel. Co.

2. ———: ———: **Statute of Frauds.** Although a stranger to a contract cannot be allowed to show that it is invalid under the Statute of Frauds, where plaintiffs did not sue upon the contract in question, and where defendant did not plead as a defense that the contract was unenforceable so far as it was concerned, but merely that it was not binding on plaintiffs until complied with, *held*, that it became the duty of plaintiffs in the exercise of reasonable care to mitigate the damages caused by the negligent error of defendant in transmitting a telegram, by refusing to perform the contract, which under the Missouri Statute of Frauds was voidable at the election of plaintiffs, and which, under the laws of Oklahoma, was absolutely void.

Appeal from Jackson Circuit Court.—*Hon. James H. Slover,* Judge.

REVERSED.

*Geo. H. Fearons* and *Karnes, New & Krauthoff* for appellant.

*William H. England* and *Dwight M. Smith* for respondent.

BROADDUS, P. J.—This is an appeal from a judgment of the Jackson County Circuit Court rendered on April 2, 1910, on defendant's appeal from a justice court, in favor of plaintiffs and against defendant.

The action is based on the following facts: On January 16, 1908, and at other times referred to in the testimony herein, the Van Alstyne Elevator Company was engaged in the grain business at Van Alstyne, in the State of Texas. The plaintiffs, Miller Bros. were at said time the proprietors of the 101 Ranch at Bliss, in the State of Oklahoma. The defendant Telegraph Company at such time, operated a line of telegraph between Van Alstyne and Bliss, above mentioned. On said January 16th, the Van Al-

styne Elevator Company telephoned to the Telegraph Company at Van Alstyne a message, of which the following is a copy, according to plaintiff's testimony.

"VAN ALSTYNE, TEXAS, 1-6, 1908.
To Miller Bros., Bliss, Okla.

Offer fifty there one to five cars bulk mixed corn. White cent over.

VAN ALSTYNE ELEVATOR CO."

This was an offer to buy at fifty cents per bushel for mixed corn and fifty-one cents per bushel for white corn, at Bliss, Oklahoma. On the same day, January 16, 1908, Miller Bros. received from the Van Alstyne Elevator Company, a telegram reading as follows:

"VAN ALSTYNE, TEXAS, 1-6, 1908.
To Miller Bros., Bliss, Okla.

Offer fifty-three one to five cars bulk mixed corn. White cent over.

VAN ALSTYNE ELEVATOR Co."

It will be noticed that the message as delivered to the Telegraph Company at Van Alstyne, Texas, read "Offer fifty there," while as received by Miller Bros. at Bliss, Okla., it read "Offer fifty-three." The idfference was caused by the transposition of two letters in the word "there." The effect of such change was to make the offer three cents more per bushel than the Van Alstyne Elevator Company actually offered according to their telegram as delivered to the Telegraph Company.

Plaintiff, George L. Miller, in his deposition, testifies that, immediately upon the receipt of the telegram purporting to offer fifty-three cents per bushel for mixed corn, and fifty-four cents for white corn, not having the corn on hand, he arranged with one, W. H. Van Selous, a ranchman living in the vicinity of Bliss, to furnish the corn at fifty-three cents per bushel. As to what passed between Miller Bros. and Van Selous at this time, J. E. Cobb, bookkeeper of Van Selous, testifies in his deposition that Mr. Miller

called Mr. Van Selous by telephone, and stated that he could place five thousand bushels of corn at fifty-three cents, and asked whether he could furnish this quantity of corn. Van Selous was not in the office at the time, and the witness Cobb, who received the message, went out and communicated the proposition to him, and on receiving an affirmative answer from Van Selous, Cobb immediately telephoned back to Miller that Van Selous would deliver the corn at Bliss. On receiving Van Selous' reply by telephone, Mr. Miller testifies he at once sent the following telegram to the Van Alstyne Elevator Company, it being only a few minutes after the receipt of their message.

BLISS, OKLA., 1-16, 1908.
To Van Alstyne Elevator Co., Van Alstyne, Texas.
We accept offer on five cars white corn.
MILLER BROS."

Before any further move had been made in the matter by any of the parties, so far as the testimony disclosed, the following letter was received by mail January 18, 1908, by Miller Bros. from the Van Alstyne Elevator Company.

"January 16, 1908.
This will be our confirmation of wire to you of even date wherein we offered you 50c for 1 to 5 cars mixed corn f. o. b. your track, one cent more for 1 to 5 cars of white. If we receive your acceptance on any of the above before 6 p. m., this will be our confirmation of purchase to you of 1 to 5 cars on the above terms. If this price is not in line with your market, please wire us on receipt of this letter best offer you can make on any of above."

It thus appears that on January 18, 1908, two days after the receipt of the erroneous telegram, and before anything further had been done towards filling the order than the telephone communication between plaintiff, George L. Miller, and W. H. Van Selous, as already noted, Miller Bros. were fully in-

formed that the error of "fifty-three" for "fifty there"
had been made in the transmission of the message.

Miller Bros. elected to fill the order at fifty-one
cents a bushel for white corn.    The Statute of Frauds
of the State of Oklahoma was read in evidence.    It is
as follows: "Section 3011. What Must be Written.
The following contracts are invalid unless the same or
some note or memorandum thereof be in writing and
subscribed by the party to be charged, or his agent."
Among those enumerated is, "An agreement for the
sale of goods, chattels or things in action, at a price
not less than fifty dollars, unless the buyer accept or
receive part of such goods and chattels, or the evi-
dence of some of them, or pay some part of the pur-
chase money."    The finding and judgment were for
the plaintiff and defendant appealed.

The defendant tried the cause upon the theory
stated in the following declaration of law submitted
to the court. "The court declares the law to be that
it was the duty of Miller Bros., when on January 18,
1908, they ascertained the error, if any, in the tele-
gram, to use reasonable exertions and diligence to
prevent loss or damage likely to accrue in consequence
of such error; accordingly, if they had not then en-
tered into a binding contract to buy corn from W. H.
Van Selous, plaintiffs might have prevented the loss
or damage they now complain of by taking steps to
that end, and if they failed to take such steps, they are
not entitled to recover herein."

We do not understand that plaintiffs dispute the
familiar principle of law requiring the injured party
to use all reasonable efforts to mitigate the damage
resulting from another's negligence, but they deny
that it has any application under the facts of this case.
They assert that although the contract they had with
Selous for the purchase of the corn was not in writing
it was only voidable at the election of the plaintiffs
who had the right to waive the necessity of the writing

and thereby make it binding. [Aultman v. Booth, 95 Mo. 383; Maybee v. Moore, 90 Mo. 340; R'y Co. v. Clark, 121 Mo. 169.] And it is said that: "It is unquestionably the law of this state that the plea of the Statute of Frauds is not available to a stranger to a contract to show that the contract is invalid because it is within the Statute of Frauds." [Scudder & Co. v. Morris, 107 Mo. App. 647.]

While it must be admitted that a stranger to the contract cannot be allowed to show that it is non-enforceable under the statute, we are not convinced for that reason that the statute does not apply to the facts of this case. We speak with reference to the Missouri statute.

This is not a suit upon the contract in question, and the appellant does not plead as a defense that it is non-enforceable so far as it was concerned, but that it was not binding on respondents until complied with and that such being the case, it became the duty of the respondents in the exercise of reasonable care in order to mitigate the damages caused by the negligence of appellant to have refused to take the grain. The plea of appellant therefore is but the assertion that respondents wrongfully failed to perform an act wholly within their power, the performance of which would have relieved appellant from all responsibility in the premises, and imposed no burden on respondents.

If we are wrong as to the effect the Missouri Statute of Frauds would have on the case, we think there can be no doubt if the contract be construed according to the statute of Oklahoma, where it is invalid. [Grant v. Milan, 20 Ok. 672.]

In states where the statute declares such contracts void they are of no effect whatever. [20 Cyc. of Law, 279.] It is held that "a contract which is illegal, as contrary to public policy, is absolutely void, and may be attacked by any one in any proceeding in which it is sought to found rights thereon."

And, "In regard to consequences to third persons, the distinction between void and voidable is highly important, because nothing can be founded on what is absolutely void." [Cumberland Tel. Co. v. Evansville, 127 Fed. 187.] "A void contract is, in fact, no contract, since an instrument of that nature does not alter the relations previously existing between the contracting parties, nor will it serve as the foundation of any right." [Allen v. City of Davenport 132 Fed. 209; Page on Contracts, sec. 20.]

The position of appellant does not depend upon precedent. The respondents were under no greater legal obligation to Van Selous to accept the grain mentioned than if there had never been any agreement whatever in reference thereto, consequntly, the acceptance of the grain by the respondents at the price of fifty-one cents was a new contract under the statute of Oklahoma, with the making of which the said telegram had nothing to do. It was made upon the terms contained in the letter of the Van Alstyne Elevator Company to respondents of January 16, 1908, and on the same terms as contained in said telegram without the error.

The respondents instead of exercising reasonable deilgence to mitigate the damages, if any, consequent upon the negligence of appellant in failing to transmit said telegram correctly, voluntarily in effect contracted anew for the grain, the evident purpose of which was to base their claim for the damages in suit. Reversed. All concur.