## J. I. CASE THRESHING MACHINE COMPANY, Appellant, v. W. E. TOMLIN et al., Respondents.

**Kansas City Court of Appeals, November 17, 1913.**

1. **CONTRACTS: Usury: Law Governing.** The place of performance of a contract, in the absence of an attempt to evade the laws, furnishes the law governing its terms. So, where a chattel mortgage and notes secured thereby were payable in Missouri, were sent to Missouri for collection, and the only one paid was paid in Missouri, they will be considered Missouri contracts, although signed in Kansas, and the Missouri laws against usury will be applicable thereto. Especially is this true where the notes and mortgage were executed pursuant to a contract made in Missouri for the purchase of a machine delivered, located, and used in Missouri, and there is nothing to show that the parties had any thought of contracting with reference to the laws of any other state.

2. **———: ———: Intent of Parties.** When there is nothing in the contract saying specifically what state shall govern the contract, it may be inferred from all the terms of the contract taken in connection with all the circumstances surrounding the transactions. While the residence of a party to a contract is, or may be, a significant fact, in determining what law the parties had in view, yet it is only a fact to be considered with other facts bearing on that question.

3. **———: ———: Jury Question: Directed Verdict.** Although the question as to what law should govern a contract may sometimes depend upon the intent of the parties, yet this does not require the submission of the question to a jury where all the facts are admitted, and but one inference can be drawn from them.

4. ————: Notes Bearing Unlawful Rate After Maturity. Our statutes forbid the taking of more than eight per cent per annum as interest. And, as such statutes make interest include any sum taken, directly or indirectly, for "forbearance" as well as for the "use" of money, a note bearing a lawful rate before maturity and an unlawful rate after that time, becomes usurious if forbearance is exercised and the unlawful rate is charged or exacted. If the sum charged or exacted for the use of money loaned exceed the legal interest, it is usury no matter what words it may be clothed in.

Appeal from Platte Circuit Court.—*Hon. A. D. Burns,* Judge.

AFFIRMED.

*Kirkpatrick, McCollum & Kirkpatrick,* and *J. H. Hull* for appellant.

*Wilson & Wilson* and *Guy B. Park* for respondents.

TRIMBLE, J.—Appellant sold respondents a threshing machine and took an old one in part payment of the purchase price and, for the remainder, took eight notes, aggregating $1500, secured by a chattel mortgage on the new machine. These notes bore six per cent interest until due and ten per cent after maturity. The first note was not paid until some time after it was due, and, when it was paid, the company exacted and received the full amount of interest thereon including the ten per cent from maturity.

Defendants complained that the machine did not work according to warranty, and, after appellant had spent some time in endeavoring to make it work and had failed according to defendants' view, the latter refused to pay the remaining notes. There was a provision in the mortgage rendering all the notes due and

174 Mo. App.—33

payable in case any one of them became due and remained unpaid. And when this occurred, the company brought this suit in replevin, under its chattel mortgage to recover the machine. It was taken from defendants by the sheriff under the writ, and, upon appellant giving bond, the machine was delivered to it.

The defendants set up, among other defenses, that appellant had charged and exacted usurious interest on the first note, and that the chattel mortgage was invalid by reason of usury in the notes secured thereby. Appellant, in reply, pleaded that the chattel mortgage and notes constituted a Kansas contract, and that, under the pleaded statutes of that state, ten per cent interest was a lawful rate.

After all the testimony bearing upon the question of usury had been offered, agreed to, and admitted by both sides to be true, the court ruled that under the admitted facts the mortgage was invalid because of usury, and sustained defendants' demurrer to the evidence. Thereupon, without waiving any point on either side, it was agreed that the value of the machine was $1000 and that the damages for its taking and detention were $125. The jury was then directed to find for defendants and against plaintiff, which was done, and plaintiff appealed.

The law in Missouri is that a greater rate of interest than eight per cent is usurious (sections 7180, 7182 Revised Statutes 1909), and a mortgage securing an usurious rate is invalid. [Sec. 7184, R. S. Mo. 1909.] Therefore, if the mortgage fails, plaintiff's replevin suit, based thereon, must also fail.

Our statute, section 7182, makes interest include any sum taken, directly or indirectly, for "forbearance" as well as for the "use" of money. Consequently a note, bearing a lawful rate before maturity and an unlawful rate after that time, becomes usurious if forbearance is exercised and the unlawful rate is charged

or exacted. [White v. Anderson, 164 Mo. App. 132.] "If the sum charged or exacted for the use of money loaned exceed the legal interest, it is usury no matter what words it may be clothed in." [Coleman v. Cole, 158 Mo. 253 l. c. 260.] The case of Taylor v. Buzzard, 114 Mo. App. 622, does not conflict with this rule. In that case the test of usury in a contract is said to be "whether it would, if performed, result in securing a greater rate of profit on the subject matter than is allowed by law." There is a difference between a penalty or forfeiture for *not performing* a contract according to its terms, and the exaction of interest as a part of its terms.

But ten per cent interest is a legal rate under Kansas law. Hence, if the contract claimed to be usurious is a Kansas and not a Missouri contract, it has no taint of usury in it.

The facts bearing on this question are admitted, so that if, as a matter of law, it is a Missouri contract, there was no error in directing a verdict. Those facts are as follows: The chattel mortgage and notes grew out of, and were provided for in, a contract for the sale of the machine which was drawn up in Kansas City, Missouri, by appellant's agent, and there signed by respondents. In form, it was an order, dated Kansas City, Mo., June 13, 1911, addressed to appellant, requesting it *to ship, or deliver,* to Beverly, or other convenient station *in the State of Missouri,* in care of appellant, for purchaser, the machine in question. In consideration of which, purchaser agreed *to receive same on cars on arrival,* subject to warranty thereinafter stated, and to pay freight and charges, and to execute eight notes, bearing six per cent until maturity and ten per cent after that date, and secured by chattel mortgage on the machine. The contract further provided that, if purchaser failed to execute the notes and mortgage, the contract should, at the com-

pany's option, have the same force and effect as a mortgage for all sums not paid in cash, and the whole amount of purchase money should be due and payable. The warranty in the contract provided what the machine should do, and, if it failed to fulfill the warranty, purchaser was to give the company written notice, and the company was to send a man to remedy the difficulty, the purchasers to render friendly assistance. If the company failed to send a man, or if, after sending him, he failed to make the machine fill the warranty, the part failing to work was to be returned by the purchaser to the place where the machine was received and the company notified, whereupon the company had the option to either furnish another machine, or part, or return the notes or money received for the machine or part so returned. If crops in purchaser's vicinity were a failure, and written notice thereof was given before shipment, the delivery of the machine could be deferred one year. If purchaser refused to accept said machinery, or if he cancelled the order, he agreed to pay the company the freight and charges on the machinery from the factory to the place of delivery.

The foregoing provisions of the contract are stated here, not as bearing on the warranty, but as throwing light on the question what was the situs of the contract in the minds of the contracting parties.

In addition to these provisions, there was endorsed on the contract a statement signed by the agent that the machine was to be located in Platte county, Missouri, and that the makers of the notes wanted them sent to Platte City, Mo., for collection. This statement gave the post office address of the purchasers as Leavenworth, Kansas.

It was admitted that, at the time this order was given, the defendants requested that the notes be sent to Platte City, Missouri, for collection as more convenient for them since the machine was to be sent to that

county and they would be threshing wheat therein near Platte City. Upon a property statement attached to the contract was a statement by the defendant, W. E. Tomlin, that *his wife* owned a 230 acre farm in Platte county, Missouri, worth fifty dollars per acre, and also a similar statement by the defendant, Elbert Cecil, that he owned a farm of 230 acres in Platte county, Missouri. The chattel mortgage was drawn up to be, and was, executed by W. E. Tomlin and Belle Tomlin, his wife, but the notes were signed by W. E. Tomlin and Elbert Cecil, and the suit is against all three of them. Endorsed on this contract is the following: "For account of local sales at Kansas City, State of Missouri." Pursuant to the contract the company shipped the machine to Beverly in Platte county, Missouri, and defendants received it there; and the old machine, taken by the company in lieu of a $1000 cash payment above the $1500 in notes provided for, was delivered to, and received by the company, in Platte county, Missouri. As the statement attached to the contract gave defendants postoffice address at Leavenworth, Kansas, the chattel mortgage and notes were sent to a bank there and defendants executed them in Leavenworth. The notes, by their terms, were payable at the Wells Banking Co's. Bank in Platte City, Missouri.

The defendants immediately began threshing with the new machine in Platte county, Missouri, but, as the machine did not work to defendants' satisfaction, the company was notified pursuant to the contract, and it sent men to Platte county, Missouri, who endeavored for some time to make the machine work properly. These men were sent three or four times. The notes were sent to Platte City for collection, or at least the one that first became due was, which was the one defendants paid with ten per cent interest from maturity. At the time of doing so, defendants objected to paying

ten per cent interest but the company exacted and received it.

It can be seen, from the uncontroverted facts above set forth, that all the important elements of the transaction had their situs in Missouri. It originated in Missouri, the contract for the purchase of the machine and the execution of the notes and mortgage was signed in Missouri, at least by defendants; the machine was to be shipped to and delivered in Missouri and used in that state, and was in fact delivered to, and received by defendants· and used by them in said state; the old machine was delivered to the company in Missouri; the company sent the notes for collection to Missouri, and one of them was paid in this state; the company agreed to, and did, send men to the machine, who worked upon it in endeavoring to. make it run satisfactorily, and this was done in Missouri. In fact, everything about the transaction took place in Missouri, except the act of signing the chattel mortgage which was done at the bank in Leavenworth. And the only possible reason for sending it there for execution was that, inasmuch as the statement attached to the contract gave Leavenworth as the defendants' postoffice, that was the most convenient place to send it for execution. The obligation to give the mortgage was not entered into in Kansas. The contract signed in Missouri already provided for the mortgage, and obligated defendants to execute the notes and mortgage; and, if they should refuse, the contract itself became a mortgage securing the debt past due and unpaid. The property, under the contract, was intended for use in Platte county, Missouri, was actually there when the mortgage was signed, and, in case of default, the mortgage provided that the company should take it wherever found and sell it with or without notice. Presumably, this would be in Platte county, since the machine was for use therein. So that there is nothing in the evidence tend-

ing to show that the parties regarded it as a Kansas contract, or as anything other than a Missouri contract.

There is nothing in the contract or mortgage expressing the intention of the parties as to what state it should be considered a contract of, except the provision in the notes making them payable in Missouri. When this "is not specifically expressed in the contract, it may be inferred from all the terms of the contract *taken in connection with all the circumstances surrounding the transactions.*" [39 Cyc. 898.] "When all of the important elements of a loan transaction have their situs in the same state—that is, when the contract is made, the consideration is given, and payment is to be made all in the same place, it is evident that such state must give the. law to the transaction wherever suit may be brought even though the result of applying such law will be to render the obligation usurious as against the law of the creditor's residence." [39 Cyc. 899.] The mere fact that the mortgage and notes were signed in Kansas does not make them Kansas contracts. Because, although the residence of a party to a contract is, or rather may be, a signfiicant fact in determining the law applicable, yet it is only a fact to be taken into consideration with other facts in determining what law the parties had in view, and will readily yield to a manifest intent to contract with reference to the law of some other place. [39 Cyc. 904.] It is true usury inheres in the loan and not in the property given to secure its payment. "But since the intent of the parties largely determines to what law the contract is referable, the situs of the property mortgaged to secure the debt, taken in connection with other elements of the transaction, frequently enables the court to determine that the parties had in mind the same situs for the whole transaction." [39 Cyc. 906.] It must be remembered

that, if any inferences are to be drawn in this case, they must come from the contract agreeing to purchase a machine and give a mortgage therefor and not from the act of signing the mortgage, since its execution was only a mere compliance with the contract theretofore entered into. But, when we turn to the contract and look at all the circumstances surrounding the transaction, we finding nothing from which can be drawn an inference that a Kansas contract was in contemplation.

In the absence of an attempt to evade the laws, the place of performance of a contract furnishes the law governing its terms. [Smoot v. Judd, 161 Mo. 673, 1. c. 684; Central National Bank v. Cooper, 85 Mo. App. 383; Trower Bros. v. Hamilton, 179 Mo. 205; Vennum v. Mertens, 119 Mo. App. 461; Johnson v. Noble Machine Co., 144 Mo. App. 436.] In this last case the notes were signed in Missouri but payable in Indiana and they were held Indiana contracts. In Bank v. Cooper, supra, the note was signed in Missouri but was payable in Kansas. It was held a Kansas contract. So that even if the notes be considered without reference to any other contract or to the transaction out of which they grew, yet, as the notes were payable in Missouri, the laws of that state should govern. The case of Davis v. Tandy, 107 Mo. App. 437, does not hold to the contrary. On page 447 it says: "The rule is, that the law of the place of performance (that is, in this case, the place where the note was to be paid), governs the contract." It is true, in the absence of any express stipulation of the parties as to which law shall govern, *and, in the absence of any evidence showing what law should govern*, it will be *presumed* that the contract was made with reference to that law which recognizes it as valid. But, when that evidence is present and shows which law was intended, then such presumption vanishes.

As usury taints a transaction from inception to close, the case cannot be confined merely to the signing of the notes and the place of their execution, but the whole matter may be considered. At the time the contract was made, it was agreed that the notes should be made payable at Wells Banking Co., Platte City, Mo., and they were made payable there, and were sent there for collection. Every act to be done, and which was done, by either party in reference to the subject of the contract, had its situs in Missouri, and no reference was made to Kansas except that defendants' post-office address was there.

It was urged that the question as to what law should govern the contract depends upon the intent of the parties, and hence the question whether it was a Kansas or Missouri contract should have been submitted to the jury by appropriate instructions. But intent is shown by outward acts, by what was done, the nature of the contract, and when and where it is to be performed. All these things were admitted. There was no issue of fact to be submitted. Hence the court did not err in directing a verdict. The judgment is affirmed. All concur.