### HOLLAND FURNACE CO. v. CONNELLEY et al.

No. 1935.

District Court, E. D. Missouri, E. D.

Dec. 31, 1942.

Thomas F. McDonald and Daniel Bartlett, both of St. Louis, Mo., for plaintiff.

Charles P. Williams, of St. Louis, Mo., for defendant.

COLLET, District Judge.

Plaintiff, a Delaware corporation, engaged in the business of the manufacture, sale and servicing of furnaces and heating

equipment, brings this action to restrain the defendant Connelley and the Connelley Heating and Air Conditioning Company, residents of St. Louis, Missouri, from engaging in the sale of furnaces and heating equipment and the servicing thereof in a restricted area in and adjacent to St. Louis, Missouri, in violation of a contract made by Connelley to abstain from so doing for a period of three years.

Defendant Connelley was associated with plaintiff in business for a number of years. Prior to 1936, he was manager of plaintiff's branch office at Alton, Illinois. Some time during that year he became the branch manager of plaintiff's branch office at St. Louis, Missouri. A written contract evidenced the terms of his appointment. Each year thereafter to and including 1941, contracts substantially similar to the first were executed for the current year. Mr. Connelley severed his association with plaintiff on December 31, 1941. Prior thereto, in December, 1941, he had organized the Connelley Heating and Air Conditioning Company, a Missouri corporation, for the purpose of continuing in the same type of business he had been conducting while associated with plaintiff. Since January 2, 1942, he has been operating the latter corporation for that purpose. The 1941 contract is made the basis of this action. In that agreement was the following stipulation:

"17. The Branch Manager agrees and covenants in consideration of the Company's appointing him a Branch Manager and because of the fact that he will therein share and be benefited by the good-will belonging to the Company, that he will not for a period of three years from the time he leaves, through any cause, the Company's employ, engage directly or indirectly, or assist anyone engaged directly or indirectly, in a like or a competing line of business within the territory covered by a radius of fifty miles from any office of the Company where he shall have engaged in business while in the Company's employ."

The validity and enforceability of that provision is the decisive element in this case. It is conceded that Connelley executed the contract and that he is and has been operating the defendant corporation in defiance thereto. His defense is that the contract, invalid when made, is not enforceable. Such agreements are valid under the law of Missouri and it is the public policy of that State that such contracts be enforced [1] but by special statute such contracts are pronounced invalid and contrary to public policy by the law of Michigan.[2]

The contract was agreed upon at St. Louis, Mo., by Connelley and plaintiff's representative, where it was signed by Connelley and the representative of plaintiff. By its terms it was not to become effective until approved by plaintiff's executive officers at the plant in Michigan. It was sent to Holland, Michigan, and there approved. By its terms it was to be entirely performed in a specified area in Missouri. In so far as the record discloses, Connelley had never been a citizen of Michigan, or resided there. There is nothing to suggest that he knew anything about or had any curiosity concerning the laws of that State. Nor is there anything to suggest that the State of Michigan in its sovereign capacity had any interest in Mr. Connelley or his and the plaintiff's business activities in Missouri. There is nothing to suggest that the parties intended that the law of Michigan should apply. Yet defendants assert, and not without justification, that many authorities require the application of the law of Michigan in the determination of the validity and a fortiori, the enforceability of this contract.

Many courts of impeccable standing have given expression to the general rule that the place of the happening of the last act necessary to give binding effect

[1] City Ice & Fuel Co. v. Snell, Mo.App., 57 S.W.2d 440; Presbury v. Fisher, 18 Mo. 50; Peltz v. Eichele, 62 Mo. 171; Wiggins Ferry Co. v. Chicago & A. R. Co., 73 Mo. 389, 39 Am.Rep. 519; Gordon v. Mansfield, 84 Mo.App. 367; Clabaugh v. Heibner, Mo.App., 236 S.W. 396; Athletic Tea Co. v. Cole, Mo.App., 16 S.W.2d 735; Hessel v. Hill, Mo. App., 38 S.W.2d 490; Kreger Glass Co. v. Kreger, Mo.App., 49 S.W.2d 260.

[2] Sec. 16667, Chapter 278, Compiled Laws of Michigan 1929. "All agreements and contracts by which any person, copartnership, or corporation promises or agrees not to engage in any avocation, employment, pursuit, trade, profession or business, whether reasonable or unreasonable, partial or general, limited or unlimited, are hereby declared to be against public policy and illegal and void."

to an agreement will be the locus contractu. It is defendants' contention that the contract, under that doctrine, was·made in Michigan, that under the law of that State it was invalid when made and may not be given vitality or enforced anywhere. The rule noted is of long standing, absolutely necessary in many instances to give definiteness to contracts by reading into agreements relating to purely transitory subjects the law of some one State or Country. We may accept the doctrine and recognize as accomplished the result of its application to the extent of assuming that the agreement was made in Michigan without necessarily concurring in defendants' conclusion that because the agreement was made there it was invalid. The latter hypothesis presupposes that the axiom that the law will be read into a contract requires that the *Michigan* law be incorporated therein. The latter well-known principle has become so well-known and so firmly established that it is not surprising that it may frequently be treated as an inexorable rule of law, applicable in all instances and for any and all purposes. But in fact the axiom, so-called, is in reality a legal fiction most useful for illustrative purposes to explain the reason for the application of concededly applicable law. It involves the application of the theory that the layman, fortunately not the Court, is presumed to know the law and hence must have known it and intended that it be a part and parcel of any agreement to which it applies. But these legal fictions, useful as they are for proper purposes, should not be made the basis for determining the applicability of a law in the first instance. For, absent initial applicability, the mere existence of a law is inconsequential.

It is suggested that the problem may be simplified, even solved, by the application of the rule announced in Griffin v. McCoach, 313 U.S. 498, 61 S.Ct. 1023, 85 L. Ed. 1481, 134 A.L.R. 1462, where the Federal Courts are directed to follow the conflict of law rules adopted by the State Courts in diversity cases. It is desirable that the question be determined upon more fundamental principles.

To what subjects will the law of a State be applied extra-territorily? Or, more accurately stated,—what contracts not malum in se, made within the borders of a state, will become malum prohibitum beyond the State by reason of the application of the statute law of the State? To further illustrate the question—Will the laws of a State be applied to all agreements made therein without regard to the sovereign interest of the State in the parties thereto or whether any of the contemplated acts are to be performed therein? Or, with more specific application to the present problem—Will the intent be assigned to the laws of Michigan that thereby that State is saying to citizens of other States that because one of the contracting parties is within the territorial borders of Michigan when he places the final stamp of approval to an agreement tentatively agreed to and to be wholly performed in Missouri, the agreement shall not be carried out in Missouri although perfectly proper there?

In the able briefs presented numerous references are made to expressions of eminent and controlling authority which would seem to require the application of the law of Michigan. Among them are the following:

"The same rule applies, vice-versa, to the invalidity of contracts; if void or illegal by the law of the place of the contract, they are generally held void and illegal everywhere. * * * If void in its origin, it seems difficult to find any principle upon which any subsequent vitality can be given to it in any other country." Story on Conflict of Laws, 8th Ed., Section 243.

"As has been said, the effect of illegality, be it illegality of contracting or of performance, is to be determined by the law of the place of contracting. If that law makes the contract itself illegal, of course it is void everywhere." Beale—Conflict of Laws, Vol. 2, page 1227.

"Since a contract, to be of any effect, must have the mutual consent of the parties, and the approval of the law, it follows that whatever form of contracting persons enter into, if the law of the place where it is entered into pronounces it not to be a mutual consent, or if it otherwise holds such act to be void, the courts of another state or country cannot afterward adjudge the thing thus ineffectually done to be a contract, however they might regard it, if done within their own jurisdiction. Hence the doctrine that a contract void in the state or country where made is void everywhere. If there are cases in apparent exception to this rule, they are not really so; for, from the nature of the rule it, unlike its counterpart, does not admit of

exceptions." Bishop on Contracts, 2nd Enl. Ed. Section 1383.

"But if the statute has expressly declared the contract void, such invalidity must, in our opinion, be recognized by the courts, state and federal, in whatever state suit may be brought for its enforcement." Loomis v. People's Construction Co., 6 Cir., 211 F. 453, loc. cit. 457, 458.

"Then it is said we cannot take notice of the revenue laws of a foreign country: but I think we must resort to the laws of the country in which the note was made; and unless it be good there, it is not obligatory in a Court of Law here." Lord Kenyon, Chief Justice, in Alves v. Hodgson, 7 Term Rep. 241.

"In states where the statute declares such contracts void, they are of no effect whatever. 20 Cyc. of Law 279. It is held that 'a contract which is illegal, as contrary to public policy, is absolutely void, and may be attacked by any one and in any proceeding in which it is sought to found rights thereon'. * * * 'A void contract is, in fact, no contract, since an instrument of that nature does not alter the relations previously existing between the contracting parties, nor will it serve as the foundation of any right.' " Miller v. Western Union Tel. Co., 157 Mo.App. 580, 138 S.W. 887, loc. cit. 889.

" 'Matters bearing upon the execution, the interpretation and the validity of a contract are determined by the law of the place where the contract is made * * *' ". Scudder v. Union Nat. Bank, 91 U.S. 406, 412, 23 L.Ed. 245.

To pronounce the rule stated in the foregoing quotations absurd [3] is wholly unjustified and would assume the applicability of the rule to all cases indiscriminately. The eminent author, Story, indulges no such presumption, for in the text from which one of the foregoing quotations came appears the following:

"The rules already considered suppose that the performance of the contract is to be in the place where it is made, either expressly or by tacit implication. But where the contract is, either expressly or tacitly, to be performed in any other place, there the general rule is in conformity to the presumed intention of the parties that the contract, as to its validity, nature, obligation, and interpretation is to be governed by the law of the place of performance. This would seem to be a result of natural justice. * * *" Story on Conflict of Laws, 8th Ed., Section 280.

From the latter quotation it is to be observed that the author lays down the proposition that when the contract is to be performed elsewhere the general rule (conforming to the assumed presumption of the parties), is that the law of the place of performance will be applied thereto. It should be noted, however, that the reason for the qualification is not given.

In J. I. Case Threshing Machine Co. v. Tomlin, 174 Mo.App. 512, 161 S.W. 286, Liebing v. Mutual L. Ins. Co., 276 Mo. 118, 207 S.W. 230, and Carson Nat'l Bank v. American Nat'l Bank, 225 Mo.App. 948, 34 S.W.2d 143, the Missouri Courts have applied the intention of the parties as the controlling factor in determining the applicable law, and in those cases accepted the evidence of the intended place of performance as sufficient indication of the intention, while in other Missouri cases such as Peak v. International Harvester Co., 194 Mo.App. 128, 186 S.W. 574, and Buck v. Meyer, 195 Mo.App. 287, 190 S.W. 997, the place of performance is treated as determinative without specific reference to the intention of the parties.

While the desire and intention of the parties to a contract may in many instances furnish justification for the application of the law intended by the parties, yet the intent of the parties alone should not in all cases be permitted to control the application or non-application of a prohibitory law. For if that be the only factor, performance could be carried out in a state where the act of performance was

---

[3] Conflict of Laws, 11 American Jurisprudence, § 118 (1937)

"A contract which is made in one jurisdiction to be performed in another presents a complex question. The rule heretofore set out that makes the place of the contract the place of the last act essential to consummation and consequently permits the proper law for the determination of the construction and validity of a contract to depend on the hazard of which of the parties happened to manifest his assent last or what was the mode or place of delivery has been pronounced an absurd one. For this reason and others, in many instances the general statement that the law of the place of making governs is modified to the effect that a contract is governed by the laws of the country in which it is entered into, unless it is executed with a view to its performance in another country."

illegal and contrary to the policy of that State merely because the parties had evidenced an intent that the law of another State should apply.

The place of performance is treated as controlling in Ruling Case Law: " 'The Supreme Court of the United States has laid down the following rules in reference to the law governing contracts in cases in which the place of making and the place of performance are not the same. 1. Matters bearing upon the execution, interpretation and validity are determined by the law of the place where the contract is made; 2. Matters connected with the performance are regulated by the law of the place where the contract by its terms is to be performed; 3. Matters relating to procedure depend upon the law of the forum. These three general rules have been adopted and applied by many jurisdictions in a long list of cases involving almost every conceivable kind of contract. But it is even more generally stated when the contract is to be performed in a place other than the place where it is made that the law of the place where the contract is to be performed will determine the validity, nature, obligation and effect of the contract, or in other words, in case of conflict the lex solutionis will prevail over the lex loci contractus.' "

But again the reason for the asserted rule is not made apparent.

The apparent conflict between the doctrine that the law of the place where the contract is made will control and the rule that the law of the place of performance will govern is in reality no conflict at all. The apparent inconsistency results from the unexpressed application of a more fundamental controlling principle.

■■■■ The obligation of the Courts of one State to enforce the rules of law of another State or country springs from the Full Faith and Credit Clause of the Constitution, art. 4, § 1. Under the mandate of the Constitution the laws of a State are given extraterritorial effect. But a State will not be required to subordinate its own laws to the declared policy of another State when sufficient justification exists to warrant the application of the law of the forum:

"Rights acquired by contract outside a state are enforced within a state, certainly where its own citizens are concerned, but that principle excepts claimed rights so contrary to the law of the forum as to subvert the forum's view of public policy. Cf. Loucks v. Standard Oil Co., 224 N.Y. 99, 110, 120 N.E. 198. It is 'rudimentary' that a state 'will not lend the aid of its courts to enforce a contract founded upon a foreign law where to do so would be repugnant to good morals, would lead to disturbance and disorganization of the local municipal law, or, in other words, violate the public policy of the state where the enforcement of the foreign contract is sought.' Bond v. Hume, 243 U.S. 15, 21, 37 S.Ct. 366, 368, 61 L.Ed. 565. * * *'" Griffin v. McCoach, 313 U.S. 498, 61 S. Ct. 1023, 1027, 85 L.Ed. 1481, 134 A.L.R. 1462. See, also, Order of United Commercial Travelers v. Meinsen, 8 Cir., 131 F.2d 176.

The justification must be one of substance and the subject matter one in which the State has a proper concern in its sovereign capacity. Home Ins. Co. v. Dick, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926, 74 A.L.R. 701. But the same lack of governmental interest which prevents a State where the action is being tried from imposing its rules of law on parties who have contracted elsewhere [4] will prevent the application of the law of the locus contractu when the latter State has a minor governmental interest.[5]

It will be unnecessary for present purposes to determine whether, when a lack of governmental interest is wholly absent, the law of the locus contractu attaches in the first instance and theoretically renders the contract void. If there be those who must have additional reason for the enforcement of a contract elsewhere which under the laws of the place of its execution would have been invalid, it may be suggested that the law of the locus contractu did not attach, *by reason of the mere existence of the law,* to a contract in which the State has no governmental interest. That does not exclude the application of the law of the locus contractu for other reasons, such as necessity in purely transitory matters or as the result of a proper and justifiable intent of the parties.

---

[4] Home Ins. Co. v. Dick, 281 U.S. 397, 50 S.Ct. 338, 74 L.Ed. 926, 74 A.L.R. 701.

[5] Alaska Packers Ass'n v. Industrial Accident Commission of California, 294 U.S. 532, 55 S.Ct. 518, 523, 79 L.Ed. 1044.

See Merchants' & Manufacturers' Securities Co. v. Johnson, 8 Cir., 69 F.2d 940.

■ Where the law of different states is conflicting and it must be determined which of the two will be applied, the Supreme Court in Alaska Packers Ass'n v. Industrial Accident Commission of California, 294 U.S. 532, 55 S.Ct. 518, 523, 79 L.Ed. 1044, said:

"It has often been recognized by this Court that there are some limitations upon the extent to which a state will be required by the full faith and credit clause to enforce even the judgment of another state, in °contravention of its own statutes or policy. [Citing cases]

"In the case of statutes, the extra-state effect of which Congress has not prescribed, where the policy of one state statute comes into conflict with that of another, the necessity of some accommodation of the conflicting interests of the two states is still more apparent. A rigid and literal enforcement of the full faith and credit clause, without regard to the statute of the forum, would lead to the absurd result that, wherever the conflict arises, the statute of each state must be enforced in the courts of the other, but cannot be in its own. Unless by force of that clause a greater effect is thus to be given to a state statute abroad than the clause permits it to have at home, it is unavoidable that this Court determine for itself the extent to which the statute of one state may qualify or deny rights asserted under the statute of another. [Citing cases]

"The necessity is not any the less whether the statute and policy of the forum is set up as a defense to a suit brought under the foreign statute or the foreign statute is set up as a defense to a suit or proceedings under the local statute. In either case, the conflict is the same. In each, rights claimed under one statute prevail only by denying effect to the other. In both the conflict is to be resolved, not by giving automatic effect to the full faith and credit clause, compelling the courts of each state to subordinate its own statutes to those of the other, but by appraising the governmental interests of each jurisdiction, and turning the scale of decision according to their weight."

■ It is clear from the language quoted that the determination of the applicable law in cases of this character does not depend in all cases upon any one factor. It may be that the place of performance will be sufficient under some circumstances and insufficient in others. Likewise the intention of the parties may sometimes be given a controlling weight in the absence of other more compelling considerations, such as governmental interest,[6] and other factors may in other instances be paramount. In the case at bar the governmental interest of the State of Missouri in maintaining uniformity in the enforcement of its established policy that contracts such as these which are actually performed in the State of Missouri be respected, so far outweighs any conceivable governmental interest of the State of Michigan as to leave no doubt that the law of Missouri should be applied. And that is true not because performance or intent, or both combined, will be controlling in every instance but because performance of contracts of this nature is a subject in which the State of Missouri has a proper governmental interest and the comparative measure of that interest resolves the conflict in favor of the enforcement of the law of Missouri.

If it be true as plaintiff contends that the law of Missouri must control the determination of which of the conflicting laws will be applied, an examination of State ex rel Weaver v. Missouri Workmen's Compensation Commission, 339 Mo. 150, 95 S.W.2d 641, will readily disclose that the Missouri Supreme Court has adopted the expression of the Supreme Court heretofore quoted from Alaska Packers Ass'n v. Industrial Accident Commission of California, 294 U.S. 532, 55 S. Ct. 518, 79 L.Ed. 1044, as the law of Missouri.

■ The further contention is made that the contract was unreasonable because the area within which Connelley was prohibited from engaging in a competing business was more extensive than the protection to which plaintiff is entitled justifies or requires. It is impossible to measure with meticulous exactness the precise area within which Connelley could with reasonable certainty take advantage of his former association with plaintiff to its injury. The record discloses that Connelley had a very close contact with the public within that part of the area in Missouri within a radius of fifty miles from the branch office in St. Louis which was in the territory of the

---

6 Long v. Long, 141 Mo. 352, 44 S.W. 341.

branch office, and a much less, although substantial business contact, as manager of plaintiff's warehouse, with those engaged in the heating business in the remainder of the specified area in Missouri and in substantially all of the area in Illinois within a radius of fifty miles from the St. Louis, Mo., branch office. In view of these facts, the magnitude of the business of the branch office while under Mr. Connelley's management and the further fact that he had been manager of the branch office at Alton, Illinois, the contract was not unreasonable in that respect. It is therefore unnecessary to consider the divisibility of the contract.

There was no substantial competent evidence offered in support of the defense that plaintiff came into Court with unclean hands. A brief explanation of the basis of the ruling excluding certain evidence offered in support of defendant's allegation that the plaintiff was guilty of improper conduct and hence would be denied relief in a Court of Equity is appropriate. Defendant offered the testimony of certain witnesses for the purpose of showing what occurred between Connelley and other salesmen of the St. Louis Branch Office in specific transactions incident to the servicing and sale by the branch office of plaintiff's products. This evidence was not excluded upon the hypothesis that the defense in support of which it was offered was not a proper defense but was excluded until and unless it be shown that the acts sought to be detailed in evidence were either authorized, directed or ratified by the plaintiff. Proof of the latter not being made, the evidence was excluded as not being binding upon or chargeable to the plaintiff. An examination of the contract discloses that by its terms Connelley was actually operating the business of the branch office and was primarily in charge of the salesmen and controlling their actions. He, himself, was substantially a "free agent" with respect to administrative matters pertaining to the branch office. He, Connelley, received all of the profits from the management of the business characterized as plaintiff's branch. It was as much to his interest as to plaintiff's interest to increase the volume of sales. The practical necessity for the application of the rule applied is, therefore, obvious. Before evidence of the acts of representatives of the branch office should be received as evidence of the plaintiff's acts, proof that the plaintiff either authorized, directed or ratified those acts was essential.

A final decree granting the injunction will be entered.