Baker Farmers Company, Plaintiff-Appellee, *v.* ASF Corporation *et al.,* Defendants-Appellants.

(No. 74-328; )

Third District—May 13, 1975.

Goldsmith, Dyer, Thelin, Schiller & Dickson, of Aurora (David D. Dyer, Jr., of counsel), for appellants.

Warren, Hayner & Baxter, of Ottawa (Lawrence W. Baxter, of counsel), for appellee.

Mr. JUSTICE ALLOY delivered the opinion of the court:

This is an appeal by defendant ASF Corporation from a judgment of the La Salle County Circuit Court in a bench trial in favor of plaintiff Baker Farmers Company and against ASF Corporation in the sum of $7,557.08 for feed, grains and supplies which were purchased from plaintiff. Defendant ASF asserts that it was liable only for half the purchases (which it has paid) and that it is not liable for the remaining half. It is contended that this obligation is solely the obligation of Raymond Harter. Plaintiff Baker Farmers Company named both ASF and Harter as defendants. Defendant Harter pleaded his discharge in bankruptcy and was dismissed from the case.

From the record it appears that Harter had been farming property owned by ASF near Somonauk since 1964 and that, until he left the farm in 1971, Harter regularly purchased grain and supplies from plaintiff for use on that farm. Harter testified that he grew crops and raised livestock on the farm and that he was farming on shares. He stated that he and ASF divided the cost of purchasing livestock equally, and, also, that they were to split the cost of buying feed and grain. Harter was to furnish equipment and labor, and profits and losses were to be divided equally.

It appears, from the testimony of Harter, that ASF handled the books as to the operation from 1967 and was the recipient of all money which resulted from operation of the farm. The corporation paid Harter for operating expenses. When Harter received bills from plaintiff, he sent the statements to ASF for ASF to make payment. Harter also testified that he was reimbursed for any bills which he paid.

The president of Baker Farmers Company testified that he bought and sold grain for Baker and was responsible for all the company's accounts. He also testified that he had known Harter since Harter started buying from Baker in about 1964. Baker kept a joint account, he stated, in the name of Harter and ASF and did not keep separate accounts for either defendant. A copy of each bill was sent to each defendant. Payment on the account was usually made by ASF, with checks written by a bookkeeper. The president of Baker Farmers asserted he knew nothing about the intent of ASF to be liable for only half the bills until this was asserted after Harter and ASF terminated their relationship in 1971.

The office manager and bookkeeper for ASF testified that she kept books for the farming operation as to ASF's share until about 1967, when Harter requested that she help him out also. She testified that she kept separate records thereafter for ASF and Harter. She specifically stated that all feed bills were paid with ASF checks. ASF introduced into evidence three checks payable to Baker, with handwritten notations

referring to "Harter's share" and "ASF's share." Baker introduced 17 other such checks, however, which bore no similar notations.

It was the contention of ASF that it had simply a landlord-tenant relationship with Harter; that he was farming on shares; and that, therefore, ASF was not responsible for Harter's debts. It asserts that Baker knew that each defendant was to pay only one-half the bills and should not now be able to hold ASF responsible for Harter's share of the obligation. The trial judge, however, found that there was an obligation on the part of ASF to pay the bill. It appears from the record that ASF paid half the Baker account out of its own funds over the years and may have paid the account in full prior to the present bill.

■■ If the parties engaged in a joint venture, ASF could be responsible for the debt. The exact nature of a joint venture may vary from case to case but general principles apply to such relationship. As indicated in *Carroll v. Caldwell* (1957), 12 Ill.2d 487, 496-97, 147 N.E.2d 69, the court said:

> "* * * that a joint adventure contemplates an enterprise jointly undertaken; that it is an association of such joint undertakers to carry out a single project for profit; that there must be a community of interest in the performance of a common purpose, a proprietary interest in the subject matter, a right to direct and govern the policy in connection therewith, and a duty, which may be altered by agreement, to share both in profit and losses."

In determining the nature of the relationship, the intent of the parties is the most significant element (*Maimon v. Telman* (1968), 40 Ill.2d 535, 240 N.E.2d 652). There need not, however, be a formal agreement and the law will imply a joint venture wherever the nature and substance of the relationship justifies such conclusion, without regard to form. *Reese v. Melahn* (1973), 53 Ill.2d 508, 513, 292 N.E.2d 375; *Ditis v. Ahlvin Construction Co.* (1951), 408 Ill. 416, 425, 97 N.E.2d 244; *Polikoff v. Levy* (1st Dist. 1965), 55 Ill.App.2d 229, 235, 204 N.E.2d 807, *cert. denied*, 382 U.S. 903.

■■ While it is obvious that farming on shares creates a landlord-tenant relationship, and not necessarily a joint venture (46 Am. Jur. 2d *Joint Ventures* § 20 (1969)), an agreement to carry on farming operations with sharing of expenses and profits can become a joint venture (46 Am. Jur. 2d *Joint Ventures* § 19 (1969)).

■■ The evidence in this cause tends to support the finding of the trial court that the general elements of a joint venture were present as outlined in the *Carroll* case. Certainly there was a joint interest in the cattle which were being raised which were purchased together and sold to a packing company, with profits and losses shared. A joint venture has

characteristics of a partnership, with the partnership often being more permanent with a broader scope, while the joint venture is usually limited to a single project. The similarity between the two types of relationships is such that the rights and liabilities of the parties are generally tested by the same rules (*Polikoff v. Levy* (1st Dist. 1955), 55 Ill.App.2d 229, 235). The result is that one member of the joint venture is liable to third parties for acts of his fellow venturer made in the course of the enterprise and notably involving payment of debts. (*Joseph W. O'Brien Co. v. Highland Lake Construction Co.* (1st Dist. 1972), 9 Ill.App.3d 408, 413, 292 N.E.2d 205.) Similarly, where one person permits others to hold him out as a partner, the Uniform Partnership Act establishes liability on the part of the person who permits such holding out, for the other person's actions or debts incurred in the course of the venture. (Ill. Rev. Stat. 1971, ch. 106½, § 16.) Similar principles apply to joint ventures.

The principle referred to was recognized prior to the adoption of the Uniform Partnership Act in Illinois in a case similar to the one before us. In *Flock v. Williams* (1912), 175 Ill.App. 319, Flock filed an action against Williams and one Hirleman for seed and supplies bought by Hirleman on credit and used on a farm. Hirleman was dismissed as a bankrupt and Williams was found liable for the whole debt, as a partner. In that case a pamphlet was introduced in evidence which was published by Williams and which alluded to Hirleman as a managing partner. There was also a contract between Williams and Hirleman by the terms of which Hirleman was to manage the farm and the two were to split the expenses. The contractual provisions resembled the understanding between ASF and Harter. While ASF did not publish a pamphlet noting Harter as a partner or joint venturer, as did Williams in the case referred to, yet ASF did not complain over a period of several years while Baker handled and billed the sales made to Harter for the farm business on the basis of a joint account with the names of both Harter and ASF. ASF paid all or most of the bills with its own corporate checks. The trial court would have been justified in concluding that ASF appeared to have acquiesced in Baker treating ASF as a joint venturer with Harter.

Since the trial court was in better position to observe the witnesses and evaluate their credibility, we would not disturb the finding of the trial court. (*Reese v. Melahn* (1973), 53 Ill.2d 508, 512-23.) The finding of the trial court is certainly not contrary to the manifest weight of the evidence. Even if there were no joint venture between the parties, the nature of the obligation which we are considering was such that it was reasonable for Baker to assume that both Harter and ASF were obligated to pay the account. Where two parties together purchase feed and supplies for the raising of livestock, from which enterprise the profits and

losses are shared, it is proper to assume that the obligation to pay the bills thus incurred is joint, unless the parties clearly specify otherwise. (17 Am. Jur. 2d *Contracts* § 298 (1964).) There was no clear expression here which demonstrates that ASF was not to be liable for a portion of the obligation. It is also particularly significant that ASF had been paying the bills for years. Any private arrangement between ASF and Harter as to how they would share expenses would not be binding on a third party, under the circumstances, but only as between the two parties themselves.

■■ The trial court's conclusion that the relationship between ASF and Harter was in the nature of a joint venture and that the two parties were jointly obligated to pay the Baker account is supported by the record in this cause. The argument of ASF advanced to the effect that the Statute of Frauds (Ill. Rev. Stat. 1971, ch. 59, § 1) was a defense to payment of the bill submitted by Baker (as an obligation of Harter alone) does not operate to discharge ASF. The Statute might have been relevant if ASF were being held to answer for what is exclusively the debt of another. But, so far as the record discloses, the debt was properly found to be an obligation of ASF directly by reason of the course of conduct of the parties. We note also that the defense of the Statute of Frauds was not raised in the trial court, and would (even if pertinent) thereby be considered waived for the purposes of appeal in this cause.

For the reasons stated, the judgment of the La Salle County Circuit Court is affirmed.

Affirmed.

STOUDER and STENGEL, JJ., concur.