TERRY PETRY, Plaintiff-Appellant *v.* CHICAGO TITLE AND TRUST COMPANY, Trustee, *et al.*, Defendants.—(LLOYD RINGLE, Trustee, Defendant-Appellee.)

Second District   No. 76-297

Opinion filed August 25, 1977.

Edward F. Diedrich and James R. Buck, both of De Kalb, for appellant.

Williams, McCarthy, Kinley, Rudy & Picha, of Rockford, and Fearer & Nye, of Rochelle, for appellee.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The plaintiff Terry Petry appeals from a summary judgment which dismissed his fourth amended complaint. While the judgment did not dispose of the litigation as to all defendants it was made final pursuant to Supreme Court Rule 304(a) (Ill. Rev. Stat. 1973, ch. 110A, par. 304(a)). The plaintiff contends that the controlling issue is whether the defendants to this appeal were engaged in a joint enterprise with the Macklins, the defendants as to whom the complaint is still pending in the trial court and that this involves unresolved questions of fact, making summary judgment inappropriate.

The complaint as amended essentially alleged that plaintiff suffered damage to farm crops because the Macklins, who operated a quarry on property which adjoined that of plaintiff negligently or willfully damaged a drain tile at a point which interfered with drainage to plaintiff's farm.

(See Ill. Rev. Stat. 1973, ch. 42, par. 12—7.)[1] It was stated that legal title to the land on which the quarry was located was in the defendant Lloyd Ringle, as trustee under Trust #101. Defendants Seth Atwood Trust #1, Barbara Mae Atwood Trust #1, Judith Atwood Wright, James Trowbridge Atwood, and Jill Atwood Moorehead, were joined as beneficiaries of Trust #101. (The Chicago Title & Trust Company as trustee under Trust #46042 was also named as a defendant but was dismissed.) The complaint further alleged:

"All activities mentioned herein were done by the Defendants, Macklin Brothers, Inc., and Robert Macklin and Dale Macklin, while operating said quarry on a commission basis as lesee [*sic*] or in a joint venture with all other Defendants named herein."

The motion of all of the defendants with the exception of Ringle, as trustee under Trust #101, was granted and the complaint was dismissed as to those defendants. No appeal was taken from that judgment. Therefore only the order dismissing the complaint against Ringle, as trustee under Trust #101, is reviewed.

The motion for summary judgment on behalf of Ringle was supported by affidavits of various of the defendants, trustees, trust officers, as well as by the discovery depositions of the Macklins and of Ringle. The affidavits of the various beneficiaries, owners and trust officers were all to the effect that no authority was given to the Macklins to cut the tile and that they had no control over the operation of the quarry in any way.

Robert Macklin, the president of Macklin Brothers testified in his discovery deposition that he was personally in charge of the employees of the corporation at the quarry. He said that he personally cut the tile on the east side between the quarry and the sand pit pond while operating a backhoe in connection with the repair of a catch basin. He testified that the break was repaired with the help of Cooprider Tile Company. He said that prior to excavating he had no conversation with any other contractor about the repair of the catch basin and the excavation of the tile area. He did not contact Ringle or obtain permission from him to excavate around the catch basin area. His purpose was to improve the flow of water from the pond. He testified that in addition to connecting with a tile which goes onto plaintiff's property the pond drains into a tile on defendants' property. He also testified that the portion of the tile which

---

[1] As material here the statute provides:

"Whoever wilfully obstructs, injures or destroys any covered drain constructed through the lands of others ° ° ° is guilty of a Class A misdemeanor ° ° °.

° ° °

In addition to the criminal penalty ° ° ° the cost of repairing or reconstructing the same and for any damage to lands, crops or other property that may have resulted therefrom."

drains into the defendants' tile was repaired jointly with the Atwood Vacuum Machine Company, one of the beneficial owners of the defendants' land, also using the Cooprider Tile Company as a contractor.

Robert Macklin further testified that Ringle, the Atwood Vacuum Machine Company or any of the other beneficial owners never came to the quarry on a daily or weekly basis or ever told him how to run the quarry operation.

Dale Macklin testified in his deposition that they operated the quarry pursuant to a lease entered into in 1958 or 1959, the copy of which had been lost.

Lloyd C. Ringle in his deposition stated that he represented the various Atwood interests including the trust in which they were beneficiaries in connection with the negotiations with the Macklins which resulted in a letter agreement in 1958 or 1959 under which the Macklins were to operate the quarry. In Ringle's affidavit attached to the motion for summary judgment he stated that he is the trustee of Trust #101 and holds legal title to the quarry property having done so since 1963. He also stated that in 1958 the Macklins, as partners, entered into a written agreement, long since lost, with the owners of the land to operate a quarry on 80 acres of land known as the Rochelle Quarry. Ringle stated that under the terms of the written agreement the Macklin brothers were allowed to operate the quarry and were to pay the owners of the land 7½¢ per ton for stone quarried and 5¢ per ton for dirt quarried. He further stated in his affidavit that he did not authorize the cutting of any drainage tile, did not cut any drainage tile, and did not have knowledge that any drainage tile was going to be cut at the Rochelle Quarry. He further stated that he has not and does not supervise, authorize or control any of the quarry operations performed by the Macklin brothers at the quarry.

In a counteraffidavit the plaintiff Terry Petry stated:

> "That to the best of his knowledge and belief, the public operation known as the Rochelle Quarry, or the Macklin Bros. Quarry, is operated on a commissioned or joint venture basis as alleged in the complaint herein filed as amended."

Defendant argues that on this record there is no remaining genuine issue of material fact and that therefore the summary judgment was properly entered. We agree.

■■ The essential elements of a joint venture have been stated in *Carroll v. Caldwell*, 12 Ill. 2d 487, 496-7 (1957):

> "[A] joint adventure contemplates an enterprise jointly undertaken; that it is an association of such joint undertakers to carry out a single project for profit; that there must be a community of interest in the performance of a common purpose, a proprietary interest in the subject matter, a right to direct and

govern the policy in connection therewith, and a duty, which may be altered by agreement, to share both in profit and losses."

Courts look to the substance and not to the form to determine whether there is a joint venture with the most important element being the intention of the parties. (*Maimon v. Telman*, 40 Ill. 2d 535, 538 (1968).) There must be a right to joint control to constitute a joint venture. (*Electrical Contractors, Inc. v. Goldberg & O'Brien Electric Co.*, 29 Ill. App. 3d 819, 823 (1975); *Neal v. Lacob*, 31 Ill. App. 3d 137, 143 (1975).) The burden of proving the existence of a joint venture is on the party who claims the relationship exists. 29 Ill. App. 3d 819, 823.

■■ We find no remaining issue of material fact after considering the pleadings, affidavits and depositions. The agreement between the parties, both as to form and substance, amounts to a lease which creates a landlord and tenant relationship.

■■ The relationship of landlord and tenant does not create a joint venture even when the rental is based upon a portion of the crop or other proceeds of the land. (See *Baker Farmers Co. v. ASF Corp.*, 28 Ill. App. 3d 393, 395 (1975). See also *Johnson v. Murray Co.*, 90 S.W. 2d 920, 923 (Tex. Civ. App. 1936).) It is, of course, true that an agreement to carry on farming operations with sharing of expenses and profits can become a joint venture. (*Baker Farmers Co. v. ASF Corp.*, 28 Ill. App. 3d 393, 395 (1975). See also *Arizona Public Service Co. v. Lamb*, 84 Ariz. 314, 327 P.2d 998, 1000 (1958); *White v. A.C. Houston Lumber Co.*, 64 P.2d 908 (Okla. 1937).) In *Baker*, there was a joint interest in the cattle which had been purchased together and which were being raised and sold to a packing company with profits and losses shared. This established the joint venture. In *Arizona Public Service Co.*, the fact that two farmers who farmed their separate farms and had no agreement to share jointly in profits and losses jointly secured a loan and jointly drew from the loan for their respective separate expenses of operation was not sufficient to create a joint venture. In *White*, the fact that there was no joint interest in the lease upon which an oil well was being drilled nor any right to share in profits or losses precluded a joint venture. We cannot agree with plaintiff's further argument that the fact the land owner receives rental or consideration based on the amount of rock and earth quarried and gets no payment if none is quarried amounts to a sharing of profits and losses in the quarry business. The record shows neither the sharing of expenses or profits nor the right to direct and govern the business of the quarry which could be the indicia of a joint venture.

■■ It is undisputed that the right to summary judgment must be free from doubt. (*Dakovitz v. Arrow Road Construction Co.*, 26 Ill. App. 3d 56, 59 (1975).) However, the mere conclusion in the counteraffidavit that the quarry is operated "on a commissioned joint venture basis" is

insufficient to create a question of fact. Further, the circumstance that the trustee Ringle and the Macklins shared the costs of tiling which served and benefited both the quarry property and adjoining properties held by the trustee is not evidence of the latter's right to control the quarry business nor in any way inconsistent with the landlord-tenant relationship. Even though a complaint may purport to raise issues of material fact summary judgment is appropriate if the issues are not supported by evidentiary facts. *Carruthers v. B.C. Christopher & Co.*, 57 Ill. 2d 376, 380 (1974); *Heidelberger v. Jewel Companies, Inc.*, 57 Ill. 2d 87, 92-93 (1974); *Fooden v. Board of Governors*, 48 Ill. 2d 580, 587 (1971).

Applying these principles we conclude that the allegation in plaintiff's fourth amended complaint and the statement in plaintiff's counter-affidavit that a joint venture existed has not been supported by evidentiary facts and has clearly been overcome by the evidence adduced from the affidavits and depositions of the defendants. Since no bona fide issue of fact remains, the right to summary judgment is clear and the judgment properly entered. We affirm.

Affirmed.

RECHENMACHER, P. J., and NASH, J., concur.