NATIONAL STARCH AND CHEMICAL
CORPORATION, Plaintiff-Appellant,

v.

Theodore A. NEWMAN,
Defendant-Respondent.

No. KCD 29633.

Missouri Court of Appeals,
Kansas City District.

Dec. 27, 1978.

Motion for Rehearing and/or Transfer
Denied Jan. 31, 1979.

Application to Transfer Denied
March 13, 1979.

Byron J. Beck, W. Anthony Feiock, Mark E. Johnson, Morrison, Hecker, Curtis, Kuder & Parrish, Kansas City, for plaintiff-appellant.

Howard F. Sachs, Spencer, Fane, Britt & Browne, Kansas City, for defendant-respondent.

Before HIGGINS, Special Judge, Presiding, PRITCHARD, J., and WELBORN, Special Judge.

ANDREW JACKSON HIGGINS, Special Judge.

Action for injunction and damages for breach of employment contract restriction against postemployment competition. Counterclaim for bonuses and termination and vacation pay. Appeal from summary judgment for defendant on plaintiff's petition, final for purpose of appeal under Rules 81.05 and 81.06. For determination is whether Missouri law, as opposed to Georgia or New York law, applies with respect to the restrictive covenant; and, if so, whether the covenant is valid and enforceable under Missouri law. Reversed.

National Starch and Chemical is a Delaware corporation with its home office and principal place of business in New Jersey. It is engaged in nationwide manufacture and sales of industrial adhesives and has, among others, an established market in states comprising its sales district administered from offices in Kansas City, Missouri.

Theodore A. Newman commenced employment with National as a sales representative in New York in December, 1958. As a condition precedent to employment, he executed an employment agreement similar to the one in dispute. Shortly thereafter he was transferred to a sales district centered in Baltimore, Maryland, including surrounding states. In February, 1961, he was transferred to a sales district centered in Atlanta, Georgia, including Alabama, Florida, Georgia, Mississippi, North Carolina, South Carolina, and Tennessee. He executed a second similar employment agreement on or about September 18, 1961.

The Employment Agreement (Sales Staff) in dispute, dated April 1, 1965, was executed by Mr. Newman in Atlanta, Georgia, and by National in New York, New York. It provides:

"SECOND: The employment hereunder shall be for one month from the date of this Agreement and thereafter until terminated by written notice given by either party to the other not less than two weeks prior to the date of termination specified in such notice. * * *

"FOURTH: A. The Employee agrees that for a period of two years after the termination of his employment (whether such termination be by the Employee or by National, and whether with or without cause) he will not for himself, or as a partner, agent or employee of any person, firm or corporation, solicit or accept any business or order for a competitive product (as hereinafter defined) from any customer of National with whom he dealt or transacted business on behalf of National, or with whom a salesman of National dealt or transacted business under his supervision or with his assistance. A competitive product shall mean any product competitive with or useable for substantially the same purposes as a product manufactured, sold or offered for sale by National during his employment with National. * * *

"NINTH: Any employment agreement heretofore made by the parties hereto is hereby terminated. Any reference, however, to dealing or transacting business with customers of National, or to inventions or improvements made or conceived during the employee's employment, shall include dealings and transactions and inventions and improvements made or conceived during any period of his employment, whether prior to or subsequent to the date of this agreement."

Mr. Newman's sales territory as of April 1, 1965, included Alabama, Georgia, South Carolina, and Tennessee.

In November, 1965, Mr. Newman was promoted to district sales supervisor and transferred to the sales district centered in Kansas City, Missouri, including Colorado, Illinois, Iowa, Kansas, Missouri, Montana, Nebraska, South Dakota, Wisconsin, and Wyoming. Sales in Missouri constitute approximately one half the sales in the district. National had eight salesmen in the district under Mr. Newman's supervision. In February, 1968, Mr. Newman was promoted to district sales manager for the Kansas City District, a position he held until his termination. Since the transfer to Kansas City, Mr. Newman has lived, and still lives, in Kansas City, Missouri.

During the course of his employment, Mr. Newman acquired knowledge of National's activities and methods of operation, including sales methods and procedures. He was introduced to and became acquainted with many of National's customers and their requirements and problems. While in Kansas City, he received salary, bonuses, and other benefits including training and experience.

In 1975, National audited its employment agreements and found a number of employees under agreements which did not best reflect their current assignments and responsibilities. Mr. Newman was among such employees; and, on June 10, 1975, an

Employment Agreement (Managerial Personnel) dated July 1, 1975, was forwarded to him for execution. He was requested in August and September, 1975, to execute the agreement but did not do so. It would have protected against disclosure of National's trade secrets as there defined. On April 19, 1976, Mr. Newman gave notice of termination of his employment with National. National responded by letter of April 23, 1976, to advise Mr. Newman of the postemployment covenant in the 1965 employment agreement.

On April 21, 1976, Theodore A. Newman and Merle L. Houck, as general partners, and Metro Metals, Inc., Western Adhesives, Inc., and Wilson M. Liggett, as limited partners, formed the Missouri River Company, a Missouri limited partnership doing business as Western Adhesives of Missouri, with express purpose to engage in the manufacture and distribution of adhesive materials at wholesale and related activities. Mr. Newman holds the position of general manager-president. The Missouri River Company has employed five persons in addition to Mr. Newman and Mr. Houck. Western Adhesives of Missouri has a sales territory composed of Missouri, Kansas, Ohio, Illinois, and Colorado. Its business is conducted primarily in the Kansas City area. As a partner, agent, and employee of Western Adhesives of Missouri, Mr. Newman, his partners, agents, and employees are selling products in competition with National, and intend to continue to solicit and accept business and orders for competitive products from National's customers. National has about fifteen or twenty per cent of the market in the Kansas City area. In numbers, National has some 640 customers in the area and sought protection over some 275 of them.

The court sustained defendant's motion for summary judgment, and entered summary judgment against plaintiff on grounds: (1) The agreement in dispute was invalid and unenforceable under the applicable laws of New York and Georgia, and, consequently, invalid and unenforceable in Missouri; (2) the agreement was inapplicable to the managerial position held by de-fendant; (3) in any event, the agreement was so suppressive of postemployment competition and harsh as to be invalid under Missouri law.

Appellant contends the court's judgment was erroneously entered for the reason that Missouri law, instead of Georgia or New York law, applies with respect to the restrictive covenant in the 1965 agreement because Missouri has the most significant relationship to the transaction and parties, and the covenant is enforceable under Missouri law. Appellant contends also that the restrictive covenant was binding on Mr. Newman after his promotions because no notice of termination was given until April 19, 1976, and there was no superseding agreement in force.

Respondent supports the trial court in its theory that the restrictive covenant was invalid and unenforceable under Georgia law and did not become enforceable by employee's change of job and residence to Missouri situs. He asserts the judgment must be affirmed because there is neither reason nor authority for selecting Missouri law to test validity of the 1965 agreement. He contends also that the sales contract did not apply to him after his promotions and was not a proper subject for enforcement against him following his termination. Finally, he asserts the agreement is too restrictive for Missouri enforcement.

The trial court entered its summary judgment on the theory that the law of the place where the contract was made normally determines the validity of the contract, and determined that it was "made" in either New York or Georgia and was invalid under the law of either, and could not be "reincarnated" in Missouri.

■ The Restatement (Second) of Conflicts of Law (1971) applies in Missouri to both tort and contract actions. *Kennedy v. Dixon*, 439 S.W.2d 173 (Mo. banc 1969); *American Institute of Marketing Sys., Inc. v. Brooks*, 469 S.W.2d 932 (Mo.App.1971); *Havenfield Corporation v. H & R Block, Inc.*, 509 F.2d 1263 (8th Cir. 1975). The Restatement promulgates rules which apply

to particular contract situations and general principles which apply when none of the particular contract rules are suitable.

■ The court recognized the Restatement, albeit erroneously, in its determination that Georgia law applied under Section 196, which deals particularly with contracts for rendition of services. It provides that validity of such a contract is determined by the local law of the state where the contract requires that the services, or major portion, be rendered, unless, with respect to the particular issue, some other state has a more significant relationship to the transaction and the parties, in which event the local law of the other state will be applied.

The error in the court's application of this section is demonstrated by Comment A to Section 196: "The rule applies if the major portion of the services called for by the contract is to be rendered in a single state and it is possible to identify this state at the time the contract is made. It is necessary that the contract should state where the major portion of the services is to be rendered or that this place can be inferred either from the contract's terms or from the nature of the services involved or from other circumstances. For this reason, the rule of this Section is unlikely to aid in the determination of the law governing contracts for employment * * * to serve as a traveling salesman in two or more states. The same is true when the work called for by the contract can be done in any one of two or more states."

The contract in dispute is silent with respect to place or places of employee's performance. The business of the employer was national in scope; and the employee, at all times, including time of execution in Georgia, performed in a territory composed of two or more states. It is not possible to identify a single state where a major portion of services was to be rendered. Mr. Newman was thus typical of the traveling salesman described in Comment A to Section 196, and Section 196 is not determinative of the law governing his contract.

The general Restatement rule for application when the particular contract rule does not apply is Section 188:

"(1) The rights and duties of the parties with respect to an issue in contract are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the transaction and the parties under the principles stated in § 6.

"(2) In the absence of an effective choice of law by the parties (see § 187), the contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

"(a) the place of contracting,

"(b) the place of negotiation of the contract,

"(c) the place of performance,

"(d) the location of the subject matter of the contract, and

"(e) the domicil, residence, nationality, place of incorporation and place of business of the parties.

"These contacts are to be evaluated according to their relative importance with respect to the particular issue.

"(3) If the place of negotiating the contract and the place of performance are in the same state, the local law of this state will usually be applied, except as otherwise provided in §§ 189–199 and 203."

Section 6 provides:

"(1) [A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.]

"(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

"(a) the needs of the interstate and international systems,

"(b) the relevant policies of the forum,

"(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

"(d) the protection of justified expectations,

"(e) the basic policies underlying the particular field of law,

"(f) certainty, predictability and uniformity of result, and

"(g) ease in the determination and application of the law to be applied."

■ The circumstances of this case warrant application of Section 188. The place of the contract in dispute was Georgia as to the employee and New York as to the employer. No place of employee's performance was delineated and, at all times, performance and the subject matter of performance was in the states of employee's sales territory, in the Atlanta district for some seven months and in the Kansas City district for ten years and six months. The employee's domicile was in the central city of his districts. His competing business was established in Kansas City, and most of his solicitations of National's customers was in Missouri. His competing company conducts no business in Georgia. The interests for protection by National are those in the Kansas City district and Missouri. The relative interest of Georgia and New York is slight, if existent at all; the competition in question bears no relation to Georgia or New York. Missouri's relationship to the parties and the transaction is superior in significance in that its policy can be advanced and the contract upheld consistent with Comment B to Section 188: "Protection of the justified expectations of the parties is a factor which varies somewhat in importance from issue to issue. As indicated above, this factor is of considerable importance with respect to issues involving the validity of a contract, such as capacity, formalities and substantial validity. Parties entering a contract will expect at the very least, subject perhaps to rare exceptions, that the provisions of the contract will be binding upon them. Their expectations should not be disappointed by application of the local law rule of a state which would strike down the contract or a provision thereof unless the value of protecting the expectations of the parties is substantially outweighed in the particular case by the interest of the state with the invalidating rule in having this rule applied."

■ The policy of Missouri is to enforce reasonable restrictive covenants which tend to protect Missouri businesses from unfair competition by former employees and to protect individuals engaging in business in Missouri from unreasonable restraints. See *Holland Furnace Co. v. Connelley*, 48 F.Supp. 543 (E.D.Mo.1942), a pre-Restatement case, where the employment agreement was made in Michigan for performance in the St. Louis, Missouri, area, including part of Illinois, and the restrictive covenant was invalid in Michigan. The former employee argued, as did Mr. Newman here, that the contract, invalid when made yet valid under Missouri law, was not enforceable. The court applied Missouri law to uphold and enforce the contract because the governmental interest of Missouri in enforcement of such contracts which are performed in Missouri outweighs any conceivable interest of Michigan.

■ In Missouri a restrictive covenant "is valid and enforceable if it is reasonable as to the employer, the employee and the public, when viewed in the light of the facts and circumstances of the particular case under consideration * * *. To be reasonable, the restraint usually must be qualified as to both time and area and must be no greater than fairly required for protection of the person for whose benefit it is imposed." *Prentice v. Rowe*, 324 S.W.2d 457, 461 (Mo.App.1959). An employer such as National has a proprietary right in its stock of customers and their good will and such asset is protected against appropriation by an employee by enforcement of a reasonable covenant not to solicit or compete. *Deck and Decker Per. Consultants v. Pigg*, 555 S.W.2d 705 (Mo.App.1977); *Chemical Fireproofing Corp. v. Bronska*, 542 S.W.2d 74 (Mo.App.1976); *Reed, Roberts Associates, Inc. v. Bailenson*, 537 S.W.2d 238 (Mo.App.1976); *House of Tools and Engineering, Inc. v. Price*, 504 S.W.2d 157 (Mo.App.1973); *Mills v. Murray*, 472 S.W.2d 6 (Mo.App.1971); *USA Chem, Inc. v. Lewis*, 557 S.W.2d 15 (Mo.App.1977).

■ The time qualification or limitation in the contract in dispute is two years. This is reasonable under cases which have found limitation of three years after termination of employment reasonably restricted

as to time. See, for example, *House of Tools and Engineering, Inc. v. Price*, supra; *Mills v. Murray*, supra; *Thompson v. Allain*, 377 S.W.2d 465 (Mo.App.1964); *R. E. Harrington, Incorporated v. Frick*, 428 S.W.2d 945 (Mo.App.1968).

The area or space limitation in Mr. Newman's contract requires that he, for himself, or as a partner, agent or employee, not solicit customers of National with whom he or a salesman under his supervision dealt. Such restriction is not the usual geographical or territorial limitation present in many cases. See, for example, *American Pamcor, Inc. v. Klote*, 438 S.W.2d 287 (Mo.App.1969); *House of Tools and Engineering, Inc. v. Price*, supra; *USA Chem, Inc. v. Lewis*, supra. It is, rather, virtually identical to the restrictive covenant found reasonable in *Mills v. Murray*, supra. Such covenant provided that the employee "will not, for a period of three (3) years * * * solicit, contract for or render the same or similar services to any [person] who or which has been * * * a client of [the employer] serviced either by Employee or by [a person] supervised by Employee." 472 S.W.2d l.c. 9. The covenant in dispute is reasonable for the reason: "The restraint of the restrictive covenant, limited as it is only as to time, is less stringent than many others imposing limitations of space as well as time (some up to five years) in non-competition and non-solicitation covenants of employment contracts which have been upheld and enforced * * *. [t]he restrictive covenant [is] reasonable to the employer, the employee, not inimical to the public interest and therefore enforceable in equity by injunction." 472 S.W.2d l.c. 12. See also Comment, 41 Mo.L.Rev. 37, 43 (1976): "One method of limiting a post-employment restraint so as to be reasonable without having to establish a territorial restraint is to draft a covenant restricting former employees from soliciting clients of their former employer. Such a restraint appears to be treated as reasonable *per se*, because the goodwill of an employer clearly extends to his current stock of customers, and the employee is not forbidden from opening a competing business, even 'at plaintiff's door-step.'" Determination of the National customers serviced by Mr. Newman while employed by National should be readily available from sales records in possession of either or both parties.

It is interesting to note also that under the law of Georgia, Section 20–504 Georgia Code Annotated, which provides that "a contract [in general restraint of trade] which is against the policy of the law cannot be enforced," covenants against competition in employment contracts are "tolerated * * * if strictly limited in time and territorial effect and otherwise reasonable considering the business interest of the employer sought to be protected and the effect on the employee." See *Orkin Exterminating Co., Inc. v. Pelfrey*, 237 Ga. 284, 227 S.E.2d 251, 252 (1976), which determined the covenant there in question unenforceable as being too indefinite. Such covenants are not "void ab initio," as stated by the present court, except in the language of one judge concurring specially, 227 S.E.2d l.c. 252. Despite the appearance of stricter consideration in Georgia, time limitation of two years has been held reasonable, *Turner v. Robinson*, 214 Ga. 729, 107 S.E.2d 648 (1959); as has territorial limitation against solicitation of customers of the former employer, *Landmark Financial Services, Inc. v. Tarpley*, 236 Ga. 568, 224 S.E.2d 736 (1976).

The trial court's finding that the 1965 agreement "terminated, if not before, when Newman became District Sales Manager in Kansas City," rests on the existence of the Employment Agreement (Managerial Personnel) form which National sought to have Mr. Newman execute in 1975.

This is not a sound reason for summary judgment against plaintiff in its attempted enforcement of the 1965 agreement. Both parties and the court are in agreement that the provisions of the 1965 agreement are clear and unambiguous, in which case there is no room for the implication of termination of the agreement made by the court, or for it to be "fairly construed" to the same end as urged by respondent. The contract in dispute was in effect "until terminated

by written notice given by either party." There was no such notice. When the terms of a contract are clear and unambiguous the contract will be enforced or given effect in accordance with its terms, and without resort to extrinsic evidence or construction. *Willman v. Beheler*, 499 S.W.2d 770 (Mo. 1973); *Commerce Trust Co. v. Katz Drug Co.*, 552 S.W.2d 323 (Mo.App.1977).

Judgment reversed; cause remanded.

All concur.