FRUIN–COLNON CORPORATION and
Granite Construction Company,
Appellants,

v.

The MISSOURI HIGHWAY AND
TRANSPORTATION
COMMISSION, Respondent.

No. 68919.

Supreme Court of Missouri,
En Banc.

Sept. 15, 1987.

J. Roger Edgar, Larry B. Luber, Michael D. Garner, St. Louis, Harold F. Blasky, Washington, D.C., for appellants.

Rich Tiemeyer, Chief Counsel, Mo. Highway & Transp. Com'n, Tana K. Van Hamme, Asst. Counsel, Jefferson City, Roland A. Eckert, Mary F. Stafford, Chicago, for respondent.

DONNELLY, Judge.

This is an appeal from an order sustaining a motion for judgment on the pleadings. Rule 55.27(a)(7) (nonjoinder of necessary party). This Court ordered transfer from the Court of Appeals, Mo. Const.Art. V, § 10 (1945), which upheld dismissal of appellants' breach of contract claim. We also affirm.

The well-pleaded facts of appellants' petition and incorporated documents stand admitted and are taken as true. *Madison Block Pharmacy v. United States Fidelity & Guaranty Co.*, 620 S.W.2d 343, 345 (Mo. banc 1981); *Holt v. Story*, 642 S.W.2d 394, 395 (Mo.App.1982). The validity of conclusions of law, however, is not admitted. *State ex rel. Jackson County Library District v. Taylor*, 396 S.W.2d 623, 624 (Mo. banc 1965); *Holt v. Story*, 642 S.W.2d at 396.

On December 18, 1963, Missouri and Illinois, through respective authorized state agencies,[1] entered an agreement to design and construct a bridge spanning the Mississippi River south of St. Louis. Ninety percent of the cost was to be supplied by the federal government. 23 U.S.C. §§ 101–57 (1982) (Federal-Aid Highway Act). Illinois and Missouri agreed to share the remaining cost equally. Pursuant to the agreement, officials in both states invited bids from bridge contractors. Bid advertisements described the required design of the structure and anticipated construction conditions. Appellants, Fruin-Colnon Corporation and Granite Construction Company, submitted a bid as joint venturers. Illinois' Department of Transportation awarded appellants a contract to construct the substructure of the bridge. The substructure was to be completed according to the bid invitation plans and "Standards for Road and Bridge Construction" promulgated by the State of Illinois.[2]

Appellants encountered construction problems when certain representations in the contract plans proved inaccurate. The plans indicated the Illinois riverbank commenced 360 feet west of its actual location; appellants had to extend their work trestle at added cost to accommodate the underestimate. Further, the plans represented

1. The Missouri State Highway Commission and Illinois Department of Public Works and Buildings, the officials of which entered this agreement, were respective predecessor agencies of the Missouri Highway and Transportation Commission (MHTC) and the Illinois Department of Transportation (IDOT).

2. The Plans and Specifications were incorporated by reference as part of appellants' contract. The contract, in turn, was incorporated with appellants' petition.

only one navigation channel existed along the river at the proposed site; in fact, there were two such channels. River-traffic collided with one of appellants' partially-completed "cofferdams"[3] necessitating its reconstruction and installation of a protective nose cone to prevent future damage. The plans also were incorrect in representing certain "Illinois riverbank piers" needed no protection from "scour";[4] two of appellants' work trestles were destroyed due to a lack of protection against this phenomenon.

Appellants complained to IDOT on several occasions about the difficulties they were experiencing, requesting that they be given time extensions for completing the work and additional compensation through "change orders" to cover losses and added expense arising from unforeseen events. IDOT refused to grant these requests.

Appellants brought suit in Cole County Circuit Court. MHTC was named a party defendant, but IDOT was not joined. Appellants complained: 1) they had not been fully paid upon satisfactory completion of the project, and IDOT refused to approve the completed work; 2) they were entitled to reimbursement for salvage and reconstruction costs incurred through loss of

equipment; 3) they had incurred extra-contractual labor costs to complete the project according to an accelerated deadline imposed by IDOT, and to accommodate IDOT's insistence that aspects of the work be done according to revised and more onerous specifications.

■ The trial court dismissed appellant's claim on considering MHTC's motion for judgment on the pleadings. The court found IDOT necessary and indispensable party to the action. Rule 52.04.[5]

Whether IDOT was a party "needed for just adjudication" is a procedural matter. *See Shepherd v. Consumers Coop. Ass'n*, 384 S.W.2d 635, 640 (Mo. banc 1964) (substantive law relates to rights and duties giving rise to claim; procedural law pertains to "machinery for carrying on the suit"). As such, Missouri law applies to *this* issue. *Meredith v. Missouri Pac. R. Co.*, 467 S.W.2d 79, 82 (Mo.1971).

■ IDOT has an interest in the litigation below as a signatory to the contract; in fact, MHTC was *not* a contracting party. Rule 52.04(a)(2). Moreover, MHTC may become "subject to a substantial risk of incurring ... inconsistent obligations by reason

---

**3.** A cofferdam consists of "interlocking sheet piling driven into the bottom of the river and extending out of the water thus forming a box-like structure." *Raymond International Inc. v. Baltimore County,* 45 Md.App. 247, 249, 412 A.2d 1296, 1298, *cert. denied,* 449 U.S. 1013, 101 S.Ct. 571, 66 L.Ed.2d 472 (1980). The structure is shored with concrete and trapped river water is removed, creating a work area for bridge pier construction.

**4.** Scouring occurs when the flow of water lifts particles, rock, and soil from the bottom of a stream or river. Scouring requires a waterflow of sufficient volume and velocity to pick up and carry away the material. *A.R.C. Indus., Inc. v. State,* 551 P.2d 951, 954 n. 5 (Alaska 1976).

**5.** Rule 52.04 directs:

(a) **Persons to be Joined if Feasible.** A person shall be joined in the action if (1) in his absence complete relief cannot be accorded among those already parties, or (2) he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may (i) as a practical matter impair or impede his ability

to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of his claimed interest. If he has not been joined, the court shall order that he be made a party. If he should join as a plaintiff but refuses to do so, he may be made a defendant.

(b) **Determination by Court whenever Joinder not Feasible.** If a person as described in subdivision (a)(1)–(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it, or should be dismissed, the absent party being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to him or those already parties; second, the extent to which by protective provisions in the judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether a judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

of [IDOT's] claimed interest." Rule 52.-04(a)(2)(ii).[6] Thus, we find IDOT a necessary party; for the latter of these reasons, we also find IDOT an indispensable party which cannot be joined.[7] *See* Rule 52.04(b) (extent to which judgment might prejudice those already parties a factor in determining indispensability).[8]

Next, appellants argue that since MHTC and IDOT acted as joint venturers or as principal and agent in pursuing the bridge project, IDOT need not be joined as a defendant in this action. We disagree, finding neither relationship to exist on these facts.

First, we must determine which state's law to apply reference *these* issues. Restatement (Second) *Conflicts of Law* §§ 6 & 188 (1971); *see National Starch & Chemical Corp. v. Newman*, 577 S.W.2d 99, 102 (Mo.App.1979). The focal "contacts" suggested by section 188 aid little in determining the more significant forum relationship here. On this record, we do not know where the contract was negotiated or made. *See id.* § 188(2)(a), (b). Performance of the contract and location of the bridge were to be in both states. *See id.* § 188(2)(c), (d). Since IDOT is an Illinois agency, Fruin-Colnon a Missouri corporation, and Granite Construction a California

company doing business in Missouri, section 188(2)(e) likewise adds nothing. Where specific guidelines in the Restatement prove insufficient for analysis, it becomes necessary to resort to more general scrutiny under section 6. *National Starch & Chemical Corp. v. Newman*, 577 S.W.2d at 102–03.

Illinois awarded this contract to appellants; appellants agreed to its terms. The contract provided that disputes were to be submitted to the Illinois Court of Claims. Illinois, therefore, has a contractual expectation that its own law be applied, Restatement (Second) *Conflict of Laws* § 6(2)(d) (1971). Further, application of that state's law offers "certainty, predictability and uniformity of result." *Id.* § 6(2)(f). Third, the 1963 agreement between the states delegated all "direct supervision, coordination and administration of construction engineering [including] the letting and award of construction contracts ... and the processing of field change orders" to Illinois, subject only to Missouri's agreement on "material decisions of policy and procedure...." As such, Illinois' interest in "the determination of the particular issue" is stronger. *Id.* § 6(2)(c). We find Illinois to have the more significant relationship with respect

---

6. Under the terms of a supplemental agreement of April 24, 1974, Missouri was and is obliged to reimburse Illinois for half of all costs Illinois incurred in advancing and supervising project construction. It does not follow Missouri could be reimbursed for costs Illinois did not incur, assuming appellants were to succeed in their breach of contract action below.

7. Claims against the State of Illinois arising from contracts with the state must be litigated in the Illinois Court of Claims. Ill.Rev.Stat. ch. 37, par. 439.8 (1981). Establishment of the claims court constitutes a limited waiver of Illinois' sovereign immunity. *See* Ill.Rev.Stat. ch. 127, par. 801 (1981); Art. XIII, § 4, Ill. Const. (1970). This waiver in no way extends to litigation before the courts of this state. Furthermore, the contract appellants entered does not suggest such acquiescence. Comity constrains us to conclude, therefore, that IDOT cannot be joined to this action. *See Ramsden v. State*, 695 S.W.2d 457 (Mo. banc 1985).

8. Appellants urge they have no adequate remedy in the Illinois courts, and that they should be

permitted to proceed below without joining IDOT even if IDOT is considered a necessary party.

The Illinois Supreme Court, though cognizant of apparent unfairness in available procedures for enforcing private contract rights against the state, ruled it was not the judiciary's place to supplant those procedures. *S.J. Groves & Sons Co. v. State*, 93 Ill.2d 397, 444 N.E.2d 131 (1983), *overruled on other grounds, Rosetti Contracting Co. v. Court of Claims*, 109 Ill.2d 72, 485 N.E.2d 332 (1985). This squares with the general principle that:

> The state can adopt whatever mode or method it elects to determine whether it shall become liable and discharge a given obligation. It can select whatever agency it sees fit and proper to pass on the question and provide that, on the determination of such agency, the claim shall be paid.

81A C.J.S. *States* § 269 (footnotes omitted). This Court will not second-guess the wisdom of Illinois legislation; nor can we permit appellants to accomplish by way of nonjoinder that which neither could do before any but the Claims Court in our sister state.

to the question raised, and apply Illinois law.

■ In Illinois, a joint venture is characterized as an undertaking "to carry out a single project for profit," *Baker Farmers Co. v. Harter*, 28 Ill.App.3d 393, 395, 328 N.E.2d 369, 372 (1975), and is so conducted that the parties: 1) possess a community of interest in achieving a common purpose; 2) have a proprietary interest in the subject matter; 3) have the right to direct and control policy; 4) agree to share profit and loss. *Id.* at 395, 328 N.E.2d at 372. "Courts look to the substance and not to the form to determine whether there is a joint venture with the most important element being the intention of the parties." *Petry v. Chicago Title & Trust Co.*, 51 Ill.App.3d 1053, 1057, 9 Ill.Dec. 951, 953, 367 N.E.2d 385, 387 (1977).

Although Missouri and Illinois expressed a desire to proceed as a joint venture in the 1963 agreement, there is no element of profit accruing to the governments of the party-states themselves. The most to be said is the end product, a bridge, enures to the benefit of all who use it.[9] Moreover, there was no meaningful sharing of costs of construction; ninety percent of the expense, therefore conceivable risk of losing contributed capital during construction, was assumed by the federal government. Under the circumstances, we cannot find that Missouri and Illinois *acted* as joint venturers, notwithstanding expressed intent.

■ Appellants' alternative claim fails as well. In Illinois, "the test of agency is the existence of the right to control the method or manner of accomplishing a task by the alleged agent...." *Matter of Estate of Rice*, 130 Ill.App.3d 416, 429, 85 Ill.Dec.

577, 585, 473 N.E.2d 1382, 1390 (1985); *Allstate Ins. Co. v. National Tea Co.*, 25 Ill.App.3d 449, 462, 323 N.E.2d 521, 530 (1975). The facts do not meet this test. Missouri's authority under the 1963 agreement is *at very most* co-equal to that of Illinois; the agreement gave Missouri no "veto" power over the day-to-day decisions of Illinois in supervising construction, nor did Illinois agencies function at Missouri's direction. Missouri had only the right to be consulted and a voice in *"decisions concerning policy and procedure and basic design criteria."* Moreover, we have difficulty with the suggestion that one state may be considered "controlled" by another in any cooperative undertaking. We find insufficient basis for concluding an agency relationship existed.

The judgment is affirmed.

BILLINGS, C.J., and WELLIVER, ROBERTSON and HIGGINS, JJ., concur.

RENDLEN, J., concurs in result.

BLACKMAR, J., concurs in result in separate opinion filed.

BLACKMAR, Judge, concurring in result.

I concur in the result reached by the principal opinion because the appellants entered into a contract in Illinois which is valid under the law of that state and are thereby bound by its provisions.

Parties to a contract need not provide for identical remedies in case of a breach.[1] Although the Illinois Department of Transportation could file suit in circuit court, the contract limited appellants' remedy to submitting a contract dispute to the Illinois Court of Claims. A sovereign entity may

---

**9.** Appellants cite *Dunahoo v. Illinois Terminal R. Co.*, 275 S.W.2d 244 (Mo.1955), in which this Court held that an Illinois joint venture was one which could be pursued for the parties' *"mutual benefit* or profit." *Id.* at 251. *Dunahoo* does not control. The benefits derived from this undertaking, as indicated, do not accrue only to the party-states themselves, or to the residents of the party states. Anyone who uses the bridge benefits from that use. Thus, the circumstances demonstrate more than mere "mutual" benefit.

**1.** 5(A) Corbin, Contracts, Sec. 1179 (1964); Restatement (Second) of Contracts, Sec. 363 comment c (1981); *S.J. Groves & Sons Co. v. State*, 93 Ill.2d 397, 403, 67 Ill.Dec. 92, 95, 444 N.E.2d 131, 134 (1982), *overruled on other grounds*, *Rosetti Contracting Co. v. Court of Claims*, 109 Ill.2d 72, 485 N.E.2d 323 (1985).

**46**

properly limit the venue of claims against it. There is no evidence that appellants were, through trickery or artifice, unaware of this provision. *Compare Taylor & Martin, Inc. v. Hiland Dairy Inc.,* 676 S.W.2d 859 (Mo.App.1984). Appellants cannot now circumvent their predetermined remedy by suing in Missouri rather than Illinois. Any relief lies in the Illinois Court of Claims, where appellants have filed a similar claim.

This ground is sufficient to decide the case. I see no reason to consider the other matters discussed in the principal opinion, and question the conclusions reached as to these.

The judgment is properly affirmed.